UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| BRANDIE ROBERTS, individually, and as next friend of L.S., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:24-cv-04176-SLD |
| | ) | |
| DEPARTMENT OF CHILDREN AND FAMILY SERVICES, MISTY LAMPLEY, ASHLEIGH RUARK, DENISE SIMKINS, GALESBURG POLICE DEPARTMENT, CITY OF GALESBURG,[1] OFFICER MICHAEL INGLES, OFFICER AMBER SCHLOMER, BERG'S TOWING AND AUTOMOTIVE INC., OFFICER FOX, JASON JORDING, and JOHN DOES 1-5, | ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

<u>MERIT REVIEW ORDER</u>

The matter comes before the Court for merit review of Plaintiff Brandie Roberts's—individually and as next friend of L.S.—redacted Complaint, ECF No. 5, and for ruling on Plaintiff's motion to request counsel, ECF No. 4; motion for waiver of PACER fees, ECF No. 14; and Rule 60(b) Motion for Relief from Order Denying Injunctive Relief, ECF No. 15. For the reasons that follow, the motions are DENIED, and the redacted Complaint is DISMISSED IN PART for failure to state a claim.

**BACKGROUND**

In January 2024, Plaintiff was "unlawfully arrested" by Defendant Amber Schlomer, an officer with Defendant Galesburg Police Department ("GPD"), for "driving with a suspended

---

[1] While the City of Galesburg is not included in the caption of Plaintiff's Redacted Complaint, ECF No. 5, Plaintiff identifies the City as a Defendant in multiple of her claims, *see* Reacted Complaint at 4. The Clerk is directed to add the City of Galesburg as a party on the docket.

license." Redacted Compl. 2. Presumably, she was driving her bus, which she alleges was her home. *See id.* Plaintiff's license was suspended due to a ticket she had previously received for having no insurance "despite having submitted proof of insurance to the state's attorney['] office that should have prevented the suspension." *Id.* "Schlomer pressured Plaintiff to place her son[—L.S.—] in a squad car" while Schlomer searched the bus. *Id.* Schlomer and Defendant Officer Fox, a city ordinance officer, then "conducted an incomplete and unauthorized inventory of the bus." *Id.* Schlomer refused to release the bus to the person Plaintiff asked to take custody of it. *Id.* Instead, the bus was impounded by Defendant Berg's Towing and Automotive Inc. ("Berg's"). Berg's "withheld her personal items, and overcharged for the towing services." *Id.*

On approximately February 5, 2024, GPD allegedly sent Plaintiff a notice that her bus would be disposed of if she did not act within the next ten days. Plaintiff never received the notice. *Id.* at 3. The same day, GPD "authorized the disposal of the bus and sold it to Berg's Towing." *Id.*

On February 15, 2024, Defendant Ashleigh Ruark, an employee of Defendant Department of Children and Family Services ("DCFS"), conducted an illegal search of the impounded bus along with Defendant Michael Ingles, a GPD officer. *Id.* at 2. "Ruark, Ingles and Berg's . . . falsely represented the condition of the bus as inappropriate for living, despite its disarray resulting from the tow, the search, and the unauthorized removal of items by" Berg's. *Id.* Ruark "threatened Plaintiff that [L.S.] would be made a ward of the state unless she complied with unreasonable demands." *Id.* In March 2024, Ruark filed a petition to make L.S. a ward of the state on the following bases: that Plaintiff had a drug possession conviction; that Plaintiff avoided a DCFS worker; that Plaintiff refused a drug test; and that Plaintiff's living conditions in

the bus were uninhabitable.  *Id.* at 3.  Plaintiff alleges that this petition was filed because of her

failure to comply with drug testing.  *Id.* at 3–4.

In June 2024, Defendant Denise Simkins, a DCFS investigator, "investigated an incident

where Plaintiff's son walked to a gas station less than 250 feet away from his home" while

supervised by Plaintiff.  *Id.*  Simkins reported Plaintiff for inadequate supervision.

Plaintiff filed her seven-count Complaint on September 30, 2024.  She was ordered to

redact and refile the Complaint on October 2, 2024.  *See* Oct. 2, 2024 Text Order (Hawley, M.J.).

In Count I, Plaintiff alleges via 42 U.S.C. § 1983 that Schlomer, Fox, Ingles, GPD, Defendant

the City of Galesburg, DCFS, Ruark, Defendant Misty Lampley, and Berg's violated her Fourth

Amendment rights when they searched and impounded her bus.  Redacted Compl. 4.   In Count

II, Plaintiff alleges via § 1983 that DCFS, Ruark, Lampley, Simkins, Berg's, GPD, and the City

of Galesburg violated her Fourteenth Amendment right to due process "through false allegations,

unlawful searches, wrongful investigations, and the unauthorized disposal of her property."  *Id.*

In Count III, Plaintiff alleges that all Defendants violated 42 U.S.C. § 1985 by conspiring to

harass and deprive her of her constitutional rights.  *Id.*  In Count IV, Plaintiff alleges via § 1983

that DCFS, GPD, and the City of Galesburg violated the Fourteenth Amendment's Equal

Protection Clause by "engag[ing] in a pattern of discriminatory treatment, repeatedly targeting

Plaintiff without legitimate basis and continuing to investigate and harass her despite vacated

charges and cleared allegations."  *Id.*  In Count V, Plaintiff alleges via § 1983 that (presumably

all) Defendants violated her and L.S.'s "fundamental right to family integrity" by "fabricating

evidence, coercing drug tests, and threatening to remove" Plaintiff's son from her care.  *Id.* at 5.

In Count VI, Plaintiff alleges that Ruark, Lampley, and Simkins violated her Fourteenth

Amendment substantive due process rights by "initiating a baseless wardship petition in

retaliation for Plaintiff's refusal to comply with their unlawful and coercive demands." *Id.* And in Count VII, Plaintiff alleges via § 1983 that Ruark, Lampley, and Simkins "retaliated against [her] for exercising her constitutional rights by refusing to submit to unreasonable demands that lacked any lawful basis." *Id.*

Plaintiff filed an emergency motion for a temporary restraining order ("TRO") on October 16, 2024 seeking, among other things, an order directing DCFS to dismiss the petition for wardship. Emergency Pet. 31–32, ECF No. 7. She represented that a hearing on the petition was scheduled for Friday October 18, 2024. *Id.* at 3. The Court denied the motion after finding that Plaintiff had not shown that she would be irreparably harmed absent preliminary action by the Court. Order 3, ECF No. 10. The Court was not provided enough information from which it could find that Plaintiff was at imminent risk of losing custody of L.S., which was her claimed future harm. *Id.* Plaintiff moves to reconsider this order, arguing that the Court committed factual and legal errors. *See, e.g.*, Mot. Relief Order 2.

## DISCUSSION

### I. Merit Review

#### a. Legal Standard

The court must dismiss a complaint brought by an individual proceeding *in forma pauperis* ("IFP") if it determines the complaint "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii); *Tate v. SCR Med. Transp.*, 809 F.3d 343, 345 (7th Cir. 2015). The Federal Rule of Civil Procedure 12(b)(6) standard applies when determining if a complaint fails to state a claim under § 1915(e)(2)(B)(ii). *Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 468 (7th Cir. 2017). Thus, the court takes all well-pleaded

4

allegations as true and views them in the light most favorable to the plaintiff. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

### b. Analysis

First, the Court addresses Defendants who need to be dismissed from this suit. Then, the Court addresses whether Plaintiff states claims for relief.

### i. GPD

"It is well-established in Illinois that a police department is not a suable entity, even regarding claims arising under § 1983." *Lalowski v. City of Des Plaines*, No. 08 C 3780, 2010 WL 145860, at *2 (N.D. Ill. Jan. 8, 2010). Rather, "[p]olice departments are departments of the municipalities they serve; they do not have distinct legal existences under Illinois law," and the municipality should therefore be sued instead. *See Hall v. Vill. of Flossmoor Police Dep't*, No. 11-CV-5283, 2012 WL 379902, at *2 (N.D. Ill. Feb. 1, 2012). Plaintiff has sued the City of Galesburg, so the Court simply DISMISSES WITH PREJUDICE all claims against GPD.

### ii. Jason Jording

Plaintiff alleges that "Defendant Jason Jording is the City Attorney for Galesburg and is sued in his official capacity." Redacted Compl. 2. Suing a government officer in her official is "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quotation marks omitted)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. Accordingly, suing Jording in his official capacity is redundant of suing the City of Galesburg, and Jording is DISMISSED from this suit.

### iii.   DCFS

DCFS is an Illinois state agency created by statute.  *See* 20 ILCS 505/1.  "States and their agencies are not 'persons' for the purpose of § 1983 and therefore cannot be sued for damages under that statute."  *Salem v. Att'y Registration & Disciplinary Comm'n of Sup. Ct. of Ill.*, 85 F.4th 438, 443 (7th Cir. 2023) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)); *see Rainey v. Samuels*, 130 F. App'x 808, 811 (7th Cir. 2005) (finding that Illinois's DCFS was "not itself a proper party, as it is an arm of the state and therefore not a 'person' for purposes of § 1983").  The same is true of claims under § 1985.  *See Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005).  All claims against DCFS, then, are DISMISSED WITH PREJUDICE.

### iv.   Count III: § 1985 Claim Against All Defendants

Section 1985(3) provides a cause of action against those who "conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."  To state a claim under § 1985(3), a plaintiff must allege:

> (1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of the alleged conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens.

*Brokaw v. Mercer County*, 235 F.3d 1000, 1024 (7th Cir. 2000) (quotation marks omitted). "To establish that the purpose of the conspiracy is to deprive a person or class of persons of equal protection of the laws, the plaintiff must allege some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action."  *Id.* (quotation marks omitted).

Plaintiff alleges that Defendants "conspired to harass and deprive [her] of her constitutional rights," Redacted Compl. 4, but she does not allege any class-based animus, *cf.*

6

*Brokaw*, 235 F.3d at 1024 (noting that "class-based invidiously discriminatory animus includes conspiracies to discriminate against persons based on sex, religion, ethnicity or political loyalty" (quotation marks omitted)); *Katz-Crank v. Haskett*, 843 F.3d 641, 650 (7th Cir. 2016) (noting that "racial or class-based discriminatory animus" is "a required element" of a § 1985(3) claim). Because Plaintiff does not allege the type of conspiracy encompassed by § 1985(3), this claim is DISMISSED.

### v. Count I: § 1983 Fourth Amendment Claim

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted)).

Plaintiff alleges that the unlawful search, inventory, and impoundment of her bus violated the Fourth Amendment. Redacted Compl. 4. Of the remaining Defendants, she asserts her Fourth Amendment claim against Schlomer, Fox, Ingles, the City of Galesburg, Ashleigh Ruark, Misty Lampley, and Berg's. *Id.*

The claim is DISMISSED against Lampley and Berg's. As to Lampley, there are no allegations that she participated in any search or seizure of Plaintiff's bus. As to Berg's, there are no allegations from which this private towing company could be found to have acted under

color of law, as is required for § 1983 claims. *See* 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . ."). To plausibly allege that private parties acted under color of law, a plaintiff must allege that the private actors and state actors reached an agreement to deny the plaintiff a constitutional right and that the private actors were "willful participant[s] in joint activity with the State or its agents." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) (alteration in original) (quotation marks omitted); *see id.* ("For an individual to act under color of law, there must be evidence of a *concerted effort* between a state actor and that individual."). There are no allegations showing that Berg's came to an agreement with any state actor to deny Plaintiff her constitutional rights.

### vi. Count II, V, and VI: § 1983 Fourteenth Amendment Due Process Claims

Counts II, V, and VI all allege violations of the Fourteenth Amendment's Due Process Clause. *See* Redacted Compl. 4–5. The Due Process Clause of the Fourteenth Amendment provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "The Due Process Clause has a substantive and procedural component." *Lukaszczyk v. Cook County*, 47 F.4th 587, 599 (7th Cir. 2022). Procedural due process is concerned with fair decision making—the state must provide sufficient process before depriving a person of a protected property or liberty interest. *See H.P. ex rel. Parker v. Kelley*, 586 F. Supp. 3d 844, 850 (S.D. Ill. 2022). Substantive due process "prevents the state from taking certain actions even if it provides procedural safeguards." *Id.* at 852 (quotation marks omitted). "In other words, it protects citizens from government conduct that is arbitrary or without reasonable justification." *Id.* (quotation marks omitted).

It is not clear why Plaintiff has three separate due process counts.   Based on Plaintiff's allegation regarding the "unauthorized disposal of her property," Redacted Compl. 4, the Court construes Count II as alleging that Ruark, Lampley, Simkins, Berg's, and the City of Galesburg did not provide adequate process before or after disposing of Plaintiff's bus.   Again, the claims against Berg's and Lampley must be dismissed because there is no allegation that Berg's agreed with state officers to violate Plaintiff's constitutional rights and there is no allegation Lampley was involved with the sale of Plaintiff's bus.   There are no allegations that Simkins or Ruark were involved in the sale of Plaintiff's bus either, so the claim is dismissed against them as well.

Counts V and VI allege violations of Plaintiff and L.S.'s familial rights and are asserted against Ruark, Lampley, and Simkins.   A plaintiff may bring a claim for a violation of procedural due process for the failure to provide adequate process before a deprivation of familial rights or a violation of the substantive due process right to familial relations.   *See, e.g.*, *Kelley*, 586 F. Supp. 3d at 850–55.   "A family's right to remain together without the coercive interference of the awesome power of the state" is one aspect of substantive due process.   *See Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 478 (7th Cir. 2011) (quotation marks omitted).   But this right is not absolute—it "must be balanced against the state's interest in protecting children from abuse."   *Id.* (quotation marks omitted).   In this case, Plaintiff has not alleged that L.S. was removed from her custody.   Instead, she is alleging that Ruark threatened that L.S. would be made a ward of the state; that Ruark demanded that Plaintiff submit to drug testing with no legitimate reason; that Ruark, Lampley, and Simkins petitioned for L.S. to become a ward of the state based on false or misleading allegations; and that Simkins "wrongfully indicated [Plaintiff] for inadequate supervision."   Redacted Compl. 3–5.   A loss of custody or parental rights, however, is not necessary to state a Fourteenth Amendment claim.   A

9

"threat alone [can] implicate[] the . . . liberty interest in familial relations." *Doe v. Heck*, 327

F.3d 492, 524 (7th Cir. 2003); *see Jerger v. Blaize*, 41 F.4th 910, 915 (7th Cir. 2022) ("Our law .

. . is clear that some threats used to obtain compliance with a child welfare investigate violate

clearly established constitutional rights."). And the Seventh Circuit has stated that a state actor

must have "a *reasonable* suspicion of abuse or neglect in order to report [and] investigate" a

parent. *Sebesta v. Davis*, 878 F.3d 226, 235 (7th Cir. 2017). Here, Plaintiff alleges that Ruark,

Simkins, and Lampley filed unfounded and false allegations against her and filed a petition for

wardship without any legitimate reason. There are sufficient allegations to state a Fourteenth

Amendment claim against Ruark, Simkins, and Lampley based on Plaintiff and L.S.'s right to

familial relations.

###### vii. Count IV: § 1983 Fourteenth Amendment Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall

. . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const.

amend. XIV. Plaintiff alleges that the City of Galesburg "engaged in a pattern of discriminatory

treatment, repeatedly targeting Plaintiff without legitimate basis and continuing to investigate

and harass her despite vacated charges and cleared allegations." Redacted Compl. 4.

This claim is DISMISSED for failure to state a claim. While "[a] municipality is a

'person' under § 1983," it may be held liable only for "its own violations of the federal

Constitution and laws." *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988

F.3d 978, 986 (7th Cir. 2021). To state a § 1983 claim against a municipality, therefore, "a

plaintiff must challenge conduct that is properly attributable to the municipality itself." *Id.*

"Specifically, the plaintiff must [allege] that the constitutional violation was caused by a

governmental policy or custom, whether made by its lawmakers or by those whose edicts or acts

may fairly be said to represent official policy." *Id.* (quotation marks omitted).  While "a widespread practice that is . . . permanent and well-settled" can constitute a government policy or custom, *id.*, Plaintiff alleges only in a very conclusory fashion that the City of Galesburg engaged in a pattern of discriminatory behavior, Redacted Compl. 4.  The only other related allegation is a conclusory allegation that Officer Fox "had a history of harassing Plaintiff with city ordinance violations." *Id.*  These non-specific allegations cannot support a claim that the City of Galesburg had a policy of discriminating against Plaintiff.

### viii.   Count VII: § 1983 Retaliation

In Count VII, Plaintiff alleges that Ruark, Lampley, and Simkins retaliated against her "for exercising her constitutional rights by refusing to submit to unreasonable demands that lacked any lawful basis."  Redacted Compl. 5.  The retaliation "took the form of a petition for wardship, which was filed without probable cause and was an abuse of power intended to coerce compliance." *Id.*  It is not clear which constitutional rights Plaintiff believes she was exercising by refusing to submit to demands: her First Amendment rights, her Fourth Amendment rights, her Fourteenth Amendment rights, or some other set of rights.  In any case, because this claim essentially overlaps with Plaintiff's substantive due process claim against Ruark, Lampley, and Simkins, the Court declines to dismiss it at this juncture. *Cf. Shah v. Inter-Cont'l Hotel Chi. Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002) ("[In the complaint,] [t]he plaintiff is not required to plead facts or legal theories or cases or statutes, but merely to describe his claim briefly and simply.").

### c.   Conclusion

The following claims remain: Count I (Fourth Amendment via § 1983) against Schlomer, Fox, Ingles, the City of Galesburg, and Ruark; Count II (Due Process via § 1983 regarding

disposal of Plaintiff's bus) against City of Galesburg; Count V and VI (Fourteenth Amendment

Familial Rights via § 1983) against Ruark, Lampley, and Simkins; Count VII (Retaliation via

§ 1983) against Ruark, Lampley, and Simkins.

## II.  Motion to Request Counsel

### a.  Legal Standard

Under the federal IFP statute, "[t]he court may request an attorney to represent any

person unable to afford counsel." 28 U.S.C. § 1915(e)(1).  However, "parties to civil litigation

have no right to counsel." *Thornhill v. Cox*, 113 F. App'x 179, 181 (7th Cir. 2004).  When faced

with a request to appoint counsel, the court must determine: "(1) has the indigent plaintiff made a

reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2)

given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt*

*v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (citing *Farmer v. Haas*, 990 F.2d 319, 321–22 (7th

Cir. 1993)).  Litigating a case includes "evidence gathering, preparing and responding to motions

and other court filings, and trial." *Id.* at 655.  In considering whether the difficulty of the case

exceeds the plaintiff's capacity to litigate it, the court considers "the plaintiff's literacy,

communication skills, educational level, and litigation experience" as well as the plaintiff's

"intellectual capacity and psychological history." *See id.*

### b.  Analysis

Plaintiff does not provide any information to suggest that she has made a reasonable

attempt to obtain counsel or any documentation of such an attempt.  Moreover, the only

information in Plaintiff's motion that potentially speaks to why she needs counsel is that her

highest level of education is some college. *See* Mot. Request Counsel ¶ 5.  This level of

education suggests to the Court that Plaintiff is competent to present her case, *see Perez v.*

*Fenoglio*, 792 F.3d 768, 784 (7th Cir. 2015) (finding that denial of counsel was reasonable where the plaintiff had attended some college), particularly at this early stage of the litigation, *cf. id.* at 785 (suggesting that advanced-stage litigation tasks are more difficult than initial stage activities).

The motion requesting counsel is DENIED WITHOUT PREJUDICE.  If Plaintiff chooses to file another motion to request counsel, she must provide documentation of her attempt to obtain counsel and explain why she is not competent to litigate this case herself.

### III.    Rule 60(b) Motion

Plaintiff moves for relief under Federal Rule of Civil Procedure 60(b) from the Court's order denying her motion for a TRO.  But Rule 60(b) applies only to final orders and judgments. *See* Fed. R. Civ. P. 60(b).  The Court has not yet entered a final order or judgment.  Accordingly, the Court construes the motion as a motion for reconsideration under Federal Rule of Civil Procedure 54(b), which provides that the Court can revise an order that does not address all claims and parties "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

Motions to reconsider non-final orders "may be entertained and granted as justice requires."  *United States v. Gerard*, No. 1:14-CV-67-TLS, 2017 WL 4769662, at *1 (N.D. Ind. Oct. 23, 2017) (quotation marks omitted); *see also* Fed. R. Civ. P. 60(b) advisory committee's note to 1946 amendment ("[I]nterlocutory judgments [and orders] are not brought within the restrictions of [Rule 60(b)], but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires.").  However, motions to reconsider such orders "serve a limited function: to correct manifest errors of law or fact or to

present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996).

Plaintiff argues that the Court "overlooked key constitutional violations and misapplied the irreparable harm standard." Mot. Relief Order 1. She argues that irreparable harm is presumed for constitutional violations and that L.S. has suffered emotional and psychological harm from Defendants' actions. *Id.* at 2. The case Plaintiff cites to, *Elrod v. Burns*, 427 U.S. 347, 373 (1976), refers only to First Amendment violations. However, the Seventh Circuit has stated that "[t]he existence of a continuing constitutional violation constitutes proof of an irreparable harm" without limiting that statement to First Amendment violations. *See Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978).

But even with this understanding, the Court's decision would not change. In order to rely on that type of irreparable harm, Plaintiff would need to show a likelihood of success on at least one of her constitutional claims and that the constitutional violation was continuing. Plaintiff argued only that she was likely to succeed on the merits "of her case because DCFS's actions are based on legally invalid grounds." Emergency Pet. 29. She pointed to an Illinois case in which the Illinois Supreme Court held that a constitutionally invalid conviction could not be the basis for terminating a parent's rights, *In re N.G.*, 115 N.E.3d 102, 134 (Ill. 2018), and a United States Supreme Court case in which the Court held that a state could not terminate a parent's rights without clear and convincing evidence, *Santosky v. Kramer*, 455 U.S. 745, 769–70 (1982). But Plaintiff did not show that she was at risk of her parental rights being terminated, so she did not make a "strong showing" that she would succeed on the merits. *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762–63 (7th Cir. 2020) (holding that a strong showing "normally includes a demonstration of how the applicant proposes to prove the key elements of its case").

14

Relatedly—and this was essentially the Court's point in denying Plaintiff's motion—Plaintiff

had not shown that a specific constitutional violation was continuing. Plaintiff's motion was

premised on there being a "hearing on the petition for wardship" scheduled for two days after the

motion was filed and the notion that "[w]ithout immediate intervention from the Court, [she]

face[d] the imminent risk of losing custody of her son based on vacated convictions and baseless

allegations that DCFS continue[d] to pursue." Emergency Pet. 3–4. But nothing she provided

showed that she was likely to lose custody at that hearing. The petition for wardship did not

state what limits on her fundamental rights DCFS sought.

"A preliminary injunction is an extraordinary remedy that should not be granted unless

the movant, by a clear showing, carries the burden of persuasion." *Chi. Dist. Council of

Carpenters Pension Fund v. K & I Constr., Inc.*, 270 F.3d 1060, 1064 (7th Cir. 2001). The Court

was not convinced based on the record before it that there was an ongoing constitutional

violation that it should enjoin, let alone that it could enter an injunction that would be detailed

and specific enough to be permissible under Federal Rule of Civil Procedure 65(d)(1). *See, e.g.*,

*E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 841–42 (7th Cir. 2013) ("An obey-the-law injunction

departs from the traditional equitable principle, codified in Rule 65(d) of the Federal Rules of

Civil Procedure, that an injunction must 'state its terms specifically[ ] and . . . describe in

reasonable detail . . . the act or acts restrained or required." (alterations in original) (quoting Fed.

R. Civ. P. 65(d)(1)).

The motion to reconsider is DENIED.

## IV.    Motion for Waiver of PACER Fees

Plaintiff's motion for waiver of PACER fees is DENIED. Plaintiff has already been sent

copies of all court orders filed in this case. And she will receive a free copy of all future filings

15

in this case via email due to her status as an e-filer.  The only non-case-related argument Plaintiff

makes is that she needs to use PACER to conduct legal research.  *See* Mot. Waiver PACER Fees

1.  But PACER does not charge for accessing judicial opinions.  Plaintiff has not identified a

justification for the Court to waive all PACER fees.

## CONCLUSION

For the foregoing reasons, Plaintiff Brandie Roberts's Redacted Complaint, ECF No. 5, is

DISMISSED IN PART.   All claims against Defendant the Galesburg Police Department are

DISMISSED WITH PREJUDICE.  The Clerk is directed to terminate the Galesburg Police

Department as a party on the docket and add the City of Galesburg as a party on the docket.  The

claims against Defendant Jason Jording are DISMISSED as redundant of claims against

Defendant City of Galesburg.  All claims against Defendant Department of Children and Family

Services are DISMISSED WITH PREJUDICE.  The Clerk is directed to terminate the

Department of Children and Family Services as a party on the docket.  Count I (Fourth

Amendment claim) is DISMISSED against Defendants Misty Lampley and Berg's Towing and

Automotive Inc for failure to state a claim.  Count II (Due Process based on disposal of

Plaintiff's bus) is DISMISSED against Defendants Ashleigh Ruark, Lampley, Denise Simkins,

Berg's Towing and Automotive Inc for failure to state a claim.  Count III (§ 1985(3) Conspiracy)

is DISMISSED in its entirety for failure to state a claim.  Count IV (Equal Protection) is

DISMISSED in its entirety for failure to state a claim.  Plaintiff may file an amended complaint,

if desired, by February 28, 2025 to replead any claim other than those dismissed with prejudice.

The following claims remain:  Count I (Fourth Amendment) against Defendants Amber

Schlomer, Officer Fox, Michael Ingles, the City of Galesburg, and Ruark; Count II (Due Process

based on disposal of Plaintiff's bus) against the City of Galesburg; Counts V and VI (Fourteenth

Amendment Familial Rights) against Ruark, Simkins, and Lampley; Count VII (Retaliation) against Ruark, Simkins, and Lampley.

Plaintiff's motion to request counsel, ECF No. 4, is DENIED WITHOUT PREJUDICE. The motions for waiver of PACER Fees, ECF No. 14, and to reconsider, ECF No. 15, are DENIED.

IT IS FURTHER ORDERED that:

1) This case is now in the process of service against the remaining Defendants in Plaintiff's Redacted Complaint: Amber Schlomer, Michael Ingles, Officer Fox, the City of Galesburg, Ashleigh Ruark, Denise Simkins, and Misty Lampley. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions— other than a motion requesting counsel—so that Defendants have notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel have filed appearances will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed.

2) The Court will obtain service on Defendant City of Galesburg by delivering a copy of the summons and Redacted Complaint to the City's mayor or city clerk in accordance with Federal Rule of Civil Procedure 4(j)(2) and 735 ILCS 5/2-211. The Clerk is DIRECTED to prepare a summons and forward it, along with a copy of the Redacted Complaint and this Order, to the U.S. Marshal for service. *See* Fed. R. Civ. P. 4(c)(3).

3) The Court will attempt service on the remaining individual Defendants (Schlomer, Ingles, Fox, Ruark, Simkins, and Lampley) by mailing requests to waive service. If Defendants agree to waive service, they will have sixty days from the date the request

was sent to file answers.  If Defendants have not filed answers or appeared through counsel within ninety days of the entry of this order, Plaintiff may file a motion requesting the status of service.

4) The Clerk is DIRECTED to prepare for each remaining individual Defendant: (1) a notice of lawsuit and request to waive service of summons form; (2) two copies of the waiver of service of summons, one of which is to be signed by Defendant or his counsel and returned to the Court within sixty days; and (3) a copy of the Redacted Complaint and this Order.  These items shall be mailed to each Defendant at the address shown on the proposed summonses Plaintiff prepared.  *See* Proposed Summonses, ECF No. 13.

5) Once counsel have appeared for Defendants, Plaintiff need not send copies of her filings to Defendants or to Defendants' counsel.  Instead, the notice of electronic filing shall constitute service.  If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

6) Plaintiff shall immediately notify the Court, in writing, of any change in her mailing address and telephone number.  Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit with prejudice.

Entered this 29th day of January, 2025.

s/ Sara Darrow
_____
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
