UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| BRANDIE ROBERTS, | ) |
| | ) |
| Plaintiff,[1] | ) |
| | ) |
| v. | ) Case No. 4:24-cv-04176-SLD-RLH |
| | ) |
| ILLINOIS DEPARTMENT OF CHILDREN | ) |
| AND FAMILY SERVICES (DCFS), MISTY | ) |
| LAMPLEY, ASHLEIGH RUARK, DENISE | ) |
| SIMKINS, CITY OF GALESBURG, | ) |
| ILLINOIS, BERG'S TOWING AND | ) |
| AUTOMOTIVE INC., OFFICER AMBER | ) |
| SCHLOMER, OFFICER MATTHEW | ) |
| INGLES, OFFICER FOX, OFFICER | ) |
| WOODBURY, OFFICER RUGGLES, | ) |
| LIEUTENANT KISLER, LIEUTENANT | ) |
| VANAKEN, DEPUTY CHIEF LEGATE, | ) |
| CHIEF RUSSELL IDLE, PROPERTY | ) |
| COMPLIANCE OFFICER TAMI | ) |
| MATEJEWSKI, PROPERTY | ) |
| COMPLIANCE OFFICER DANIEL | ) |
| KOERNER, PROPERTY COMPLIANCE | ) |
| OFFICER JONATHAN FOX, CITY | ) |
| MANAGER ERIC HANSEN, CITY | ) |
| ATTORNEY JASON JORDING, JUDGE | ) |
| CHAD LONG, UNIDENTIFIED STATE'S | ) |
| ATTORNEY OFFICIALS, | ) |
| ORDINANCE/CODE ENFORCEMENT | ) |
| OFFICERS JOHN DOES 1–5, | ) |
| | ) |
| Defendants. | ) |

---

[1] Plaintiff purports to assert eleven claims on behalf of her minor child, L.S. Am. Compl. 143–200, ECF No. 28. A parent may not litigate an action on her child's behalf without a lawyer. *See, e.g.*, *Foster v. Bd. of Educ. of City of Chi.*, 611 F. App'x 874, 877 (7th Cir. 2015) (collecting cases). L.S. is DISMISSED WITHOUT PREJUDICE from this suit. Plaintiff may seek to reassert these claims if she is represented by an attorney.

<u>ORDER</u>

The matter comes before the Court for merit review of Plaintiff Brandie Roberts's

Amended Complaint for Violation of Civil Rights (42 U.S.C. §§ 1983 and 1985), ECF No. 28.[2]

Also pending before the Court is Plaintiff's Motion to Appoint Counsel, ECF No. 29, and

Motion to Voluntarily Dismiss Judge Long as a Defendant, ECF No. 35. For the reasons that

follow, the Motion to Appoint Counsel is DENIED WITHOUT PREJUDICE, the Motion to

Voluntarily Dismiss Judge Long as a Defendant, construed as a motion to amend, is GRANTED,

and the Amended Complaint is DISMISSED IN PART for failure to state a claim.

## BACKGROUND

Plaintiff's allegations concern the Illinois Department of Children and Family Services

("DCFS") and its employees; the City of Galesburg ("Galesburg") and its police officers,

property compliance officers (both identified and unidentified John Does), city manager, and city

attorney; state court Judge Chad Long; and unidentified state's attorney officials. *See, e.g.*, Am.

Compl. 1–2. She alleges that these entities and individuals engaged in a broad campaign of

harassment against her and her minor son, L.S., thereby abusing their positions to undermine her

parent-child relationship with L.S. and to unlawfully deprive her of her property and rights.

Her allegations focus on three main topics. First, she details a traffic stop in or around

January 2024 conducted by Officer Amber Schlomer and other Galesburg police officers. *Id.* at

7–10. This stop resulted in Plaintiff's arrest, which was witnessed by L.S., as well as the seizure,

search, and impoundment of Plaintiff's bus, which also served as her residence. *Id.* at 7–9. She

asserts that certain Defendants mishandled the impound hearing regarding her bus, leading to its

wrongful disposal. *Id.* at 9–10. Second, she describes actions taken by DCFS against her,

---

[2] ECF references correspond to the docket of 4:24-cv-04176-SLD-RLH unless otherwise noted.

including the search of her impounded bus by DCFS investigator Ashleigh Ruark and Officer

Ingles, culminating in a petition to make L.S. a ward of the state. *Id.* at 10–13. Third, she

characterizes as "raids" the many instances of code enforcement initiated by Galesburg officials

over at least the three last years—these enforcement actions resulted in seizures of her property

and the imposition of over $14,000 in liens on her home. *Id.* at 13.

Following the Court's dismissal in part of her redacted Complaint, *see* Jan. 29, 2025

Order 4–12, ECF No. 16, Plaintiff filed her Amended Complaint, which asserts dozens of new

counts and adds fourteen new Defendants, *see generally* Am. Compl. The Court also previously

denied Plaintiff's request that the Court attempt to recruit counsel on her behalf, *see* Jan. 29,

2025 Order 12–13, and Plaintiff now renews that request, *see generally* Mot. Appoint Counsel.

On four occasions, the Court has rejected Plaintiff's requests for preliminary injunctive relief,

including requests that the Court dictate to a state court how to conduct a family law case. *See*

*generally* Oct. 17, 2024 Order, ECF No. 10; May 14, 2025 Order, ECF No. 33; May 19, 2025

Order, ECF No. 36; May 21, 2025 Text Order.

## DISCUSSION

### I.    Motion to Appoint Counsel

#### A.  Legal Standard

Under the federal *in forma pauperis* statute, "[t]he court may request an attorney to

represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). However, "parties to

civil litigation have no right to counsel." *Thornhill v. Cox*, 113 F. App'x 179, 181 (7th Cir.

2004). When faced with a request to appoint counsel, the court must determine: "(1) has the

indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from

doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to

litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (citing *Farmer v. Haas*, 990 F.2d 319, 321–22 (7th Cir. 1993)). Litigating a case includes "evidence gathering, preparing and responding to motions and other court filings, and trial." *Id.* at 655. In considering whether the difficulty of the case exceeds the plaintiff's capacity to litigate it, the court considers "the plaintiff's literacy, communication skills, educational level, and litigation experience" as well as the plaintiff's "intellectual capacity and psychological history." *See id.* Even if the court grants a motion to recruit counsel, there is no guarantee it could find one willing to take the appointment—the court cannot require an attorney to accept appointment to a civil case. *See id.* at 653.

### B. Analysis

The Court denied Plaintiff's prior request that the Court attempt to recruit counsel on her behalf, instructing her that future requests must include "documentation of her attempt to obtain counsel and [must] explain why she is not competent to litigate this case herself." Jan. 29, 2025 Order 12–13. Plaintiff's pending request includes an email exchange with one attorney and screenshots of completed intake forms on four law-firm websites. Mot. Appoint Counsel 3–7.[3] She explains that she needs counsel because she is "not legally trained and lack[s] the education, health, and time needed to meet the legal and procedural demands of this litigation." *Id.* at 2. Plaintiff states that she is "open to limited scope representation" wherein she would handle "basic filings and communication with the Court" while an attorney would handle "the more complex parts of this case—like discovery, dispositive motions, and trial." *Id.*

"Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases." *Olson v. Morgan*,

---

[3] The Motion to Appoint Counsel is unpaginated so the Court uses the page numbers generated by CM/ECF.

750 F.3d 708, 711 (7th Cir. 2014). "The question is not whether a lawyer would present the case more effectively than the pro se plaintiff; if that were the test, district judges would be required to request counsel for every indigent litigant." *Pruitt*, 503 F.3d at 655 (quotation marks omitted). As the Court previously noted, Plaintiff's level of education—some college—suggests that she can handle this litigation at this early stage. Jan. 29, 2025 Order 12–13 (citing *Perez v. Fenoglio*, 792 F.3d 768, 784 (7th Cir. 2015)). Plaintiff's filings thus far have been sufficiently cogent, and she has been able to clearly communicate her theories of the case. Moreover, this litigation is still at its earliest stages—no Defendant has had to file an answer yet. Given Plaintiff's abilities as a layperson to communicate her positions and this litigation's procedural posture, Plaintiff's Motion to Appoint Counsel is DENIED WITHOUT PREJUDICE.

## II.    Motion to Dismiss Judge Chad Long

Plaintiff seeks to dismiss Judge Chad Long "pursuant to Rule 41(a)(2)," asserting her belief that "maintaining Judge Long as a defendant in this federal lawsuit could create a potential conflict of interest and may undermine the impartiality of the ongoing juvenile proceedings [in state court]." Mot. Dismiss Judge Long 1.[4] In the Seventh Circuit, Rule 41(a) is limited to dismissing an action, not individual parties. *See Taylor v. Brown*, 787 F.3d 851, 857 (7th Cir. 2015). The proper approach to dismissing claims against an individual party is to seek leave to file an amended complaint via Rule 15(a)(2). *See id.* at 858; *see generally Interfocus Inc. v. Hibobi Tech. Ltd.*, No. 22-cv-2259, 2023 WL 4137886 (N.D. Ill. June 7, 2023). The Court construes the Motion to Voluntarily Dismiss Judge Long as a Defendant as a motion to amend Plaintiff's pleading, and GRANTS that motion, such that all claims against Judge Long are DISMISSED.

---

[4] The Motion to Voluntarily Dismiss Judge Long as a Defendant is unpaginated so the Court uses the page numbers generated by CM/ECF.

### III.    Merit Review

#### A.    Legal Standard

A court must dismiss a complaint brought by an individual proceeding IFP if it determines that the complaint "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii); *Tate v. SCR Med. Transp.*, 809 F.3d 343, 345 (7th Cir. 2015). The Federal Rule of Civil Procedure 12(b)(6) standard applies when determining whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii). *Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 468 (7th Cir. 2017). Thus, the court takes all well-pleaded allegations as true and views them in the light most favorable to the plaintiff. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

If a claim is dismissed, a court may decide whether the plaintiff should be given leave to amend that claim. Leave to amend should be "freely" given "when justice so requires," Fed. R. Civ. P. 15(a)(2), and a plaintiff ordinarily should be given a second chance to properly plead her claim, *see Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015). However, "district courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008).

#### B.    Analysis

As an initial matter, Plaintiff purports to assert eleven claims on behalf of her minor child, L.S. Am. Compl. 143–200. A parent may not litigate an action on her child's behalf without a lawyer. *See, e.g.*, *Foster v. Bd. of Educ. of City of Chi.*, 611 F. App'x 874, 877 (7th Cir. 2015) (collecting cases). L.S. is DISMISSED WITHOUT PREJUDICE from this suit.

Plaintiff may not seek to assert claims on behalf of L.S. unless she has counsel.  Next, the

Amended Complaint as a whole includes a significant amount of redundant material, legal

citation, and legal argument.  For example, Plaintiff has included multiple counts under the

Equal Protection Clause, Due Process Clause, and Fourth Amendment based on the same

conduct, indicating that Plaintiff believes that she must identify different counts for each legal

theory.  *See* Am. Compl. 13–16, 30–39, 55–71, 92–97, 117–21, 125–28, 131–38.  Moreover,

some counts repeat earlier counts but instead of including additional factual allegations, Plaintiff

includes her opinions and legal arguments regarding her beliefs as to how Defendants violated

her rights.  *Compare id.* at 30–31 (alleging in Count Five, entitled "Equal Protection Violations,"

that Plaintiff was treated differently than others (capitalization altered)), *with id.* at 135–37

(stating in Count Thirty-Eight, entitled "Class-of-One Equal Protection Violation:

Nonconformity, Advocacy, and Disability-Based Animus," that Plaintiff "believe[s] she was

singled out because [she does not] 'look the part' of who [the named Defendants] believe a stable

mother, homeowner, or community leader should be" (capitalization altered)).  The Court will

address like claims together and consolidate where appropriate, rather than attempt to discern the

material differences between counts which cover the same ground.

Plaintiff names Galesburg, Berg's Towing and Automotive, Inc. ("Berg's"), and/or DCFS

as a Defendant in many counts and alleges that those entities are liable for others' conduct, but

then separately names those entities in multiple counts which allege that they are liable under

*Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978), or

*respondeat superior*.  *E.g.*, Am. Compl. 16–20, 60–67.  The Court does not separately consider

the counts asserting a theory of vicarious liability—specifically Counts Two,[5] Twenty-One,

---

[5] Although not named in the Amended Complaint's caption, Plaintiff asserts a *Monell* claim against the "Mayor's Office (for injunctive relief)."  Am. Compl. 129.  This count is redundant of the allegations against Galesburg itself,

Twenty-Nine, and Thirty-Four—because these counts are duplicative of the counts which identify those entities as Defendants and describe the conduct of others for which those entities are allegedly vicariously liable. *See id.* at 16–20, 91–92, 115–17, 129–30. A similar analysis applies to Count Sixteen, which alleges that certain Defendants are liable for failing to intervene, because that count is redundant of Plaintiff's descriptions of the underlying conduct which those Defendants allegedly failed to prevent or remedy. *Compare id.* at 14 (alleging in Count One that Officer Woodbury is liable for his "failure to prevent the unconstitutional search of [Plaintiff's] home in January 2024), *with id.* at 78–80 (naming Officer Woodbury in Count Sixteen as one of the "[m]ultiple officers [who] witnessed the unlawful seizure of [Plaintiff's] home (the bus) . . . and did nothing"). Finally, the Court does not consider Counts Twenty-Four, Twenty-Five, and Thirty-Five, *see id.* at 97–103, 130–31, as separate claims because they are requests for relief that are already included in the substantive counts, *compare, e.g.*, *id.* at 37 (requesting as part of an equal protection claim that the Court issue an injunction mandating that DCFS vacate certain reports), *with id.* at 99 (requesting as part of Count Twenty-Four, a separate count detailing Plaintiff's requested injunctive relief, an injunction mandating that DCFS vacate those same reports).

To be clear, a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff need not identify legal theories, caselaw, statutes, or other legal authorities in her complaint. *See Shah v. Inter-Continental Hotel Chi. Op. Corp.*, 314 F.3d 278, 282 (7th Cir. 2002) ("[A] plaintiff is not required to plead . . . legal theories or cases or statutes, but merely to describe his claim briefly and simply."). A complaint "must be presented with clarity sufficient to avoid requiring a

---

so the Court does not separately consider allegations related to the Mayor's Office. *See, e.g.*, *Ball v. City of Muncie*, 28 F. Supp. 3d 797, 802 (S.D. Ind. 2014).

district court or opposing party to forever sift through its pages in search" of what the plaintiff claims. *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990). "A complaint that is prolix and/or confusing makes it difficult for the defendant[s] to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 77576 (7th Cir. 1994). Courts may properly dismiss complaints which are overly long, unintelligible, and unorganized. *See, e.g.*, *Reinoehl v. Ctrs. for Disease Control & Prevention*, CAUSE NO. 3:21-CV-608 DRL-MGG, 2022 WL 483741, at *3 (N.D. Ind. Feb. 16, 2022) (collecting cases affirming the dismissal of a complaint on this basis), *aff'd*, No. 22-1401, 2022 WL 14461946 (7th Cir. Oct. 25, 2022).

Although the Amended Complaint is not so disorganized as to warrant dismissal in its entirety, its excessive length and redundant nature is less than desirable. Should Plaintiff seek the Court's leave to further amend her pleading, due attention should be paid to whether a particular allegation is factual, novel, necessary, and presented in logical fashion. Finally, Judge Barbara B. Crabb offered the following advice to *pro se* litigants which is apt here as well:

> Pro se litigants often struggle to separate truly factual statements from vague or conclusory statements, so here are a couple of pointers. As a general rule, conclusory allegations are what plaintiff *thinks* about a particular thing or act (so-and-so was manipulative, dishonest, fraudulent, conspiratorial or malicious) and factual allegations are what was or may have been *observed* about the thing or act (so-and-so destroyed the documents, made an arrest, pressed charges or said "X," knowing that "Y" was the truth). As for vagueness, an allegation is too vague if it does not provide enough information to allow a person reading the allegation to know *what* thing or act is being described or distinguish it from other things or acts. Thus, "defendant hid documents from my files" may be too vague while "defendant hid all documents related to my college discipline" would not be) [sic]. In considering whether a statement is too vague, plaintiff should ask himself whether someone who knew nothing about his case would know what he is describing.

*Kunferman v. Bd. of Regents of Univ. of Wis. Sys.*, No. 09-cv-662-bbc, 2010 WL 2486351, at *3 (W.D. Wis. June 16, 2010).

1.  **Counts One, Ten, and Thirteen: Fourth Amendment Violations Against Galesburg, Berg's, Schlomer, Ingles, Officer Fox,[6] Woodbury, Ruggles, Vanaken,[7] Kisler, Legate, Idle, Hansen, Matejewski, Koerner, Jonathan Fox, Ruark, and Lampley**

Counts One, Ten, and Thirteen all allege that certain Defendants are liable for violating Plaintiff's rights under the Fourth Amendment, which protects "against unreasonable searches and seizures." U.S. Const. amend. IV. The Court's analysis is based on each set of facts rather than individual counts. First, Plaintiff alleges that her Fourth Amendment rights were violated when she was arrested in January 2024 by Officer Schlomer and her bus was subsequently searched, seized, and impounded. Am. Compl. 7–9. Plaintiff represents that bodycam footage shows that Officer Woodbury initially located Plaintiff's bus and Officer Schlomer asked if she could handle the stop of the bus. *Id.* at 8. Plaintiff was stopped "for driving with a suspended license," although that suspension "was later rescinded." *Id.* at 7. Officer Ruggles, Officer Woodbury, and Officer Fox were all present for the traffic stop and did not stop Officer Schlomer from arresting Plaintiff or searching her bus. *Id.* at 55–56. Officer Schlomer refused to release the bus to Plaintiff's "designated caregiver and driver," which Plaintiff asserts violated Galesburg's policies regarding the towing of vehicles. *See id.* at 9 (asserting that Officer Schlomer's actions "violated local police policy, which states that a tow is not necessary if a licensed driver is present"). Either Officer Schlomer or Officer Fox stated their disbelief that Lieutenant "Kisler was all for it," which Plaintiff characterizes as evidence that Lieutenant Kisler had "approved" this "planned surveillance operation." *Id.* at 8. Plaintiff alleges that she

---

[6] Plaintiff asserts claims against both "Officer Fox," a Galesburg Police Department officer, as well as "Jonathan Fox," who is a "Property Compliance Officer." *E.g.*, Am. Compl. 6–7. The Court presumes these are different people, such that it uses "Officer Fox" to refer to the police officer and "Jonathan Fox" when referring to the property compliance officer.

[7] Plaintiff's spelling of some Defendants' names is inconsistent. *Compare, e.g.*, Am. Compl. 1 ("Lieutenant Vanaken"), *with id.* at 9 ("Officer Vannaken"). For consistency, the Court uses Defendants' names as listed in the caption of the Amended Complaint. *See id.* at 1–2.

informed Lieutenant Vanaken, Deputy Chief Legate, Chief Idle, the City Manager, and the Mayor of her arrest and the improper plan to hold an impound hearing concerning her bus "for 20 days later" instead of "within 72 hours"—they all refused to intervene and grant her an emergency impound hearing. *Id.* at 10, 57. City Manager Hansen is allegedly responsible for "overseeing a citywide system of abusive enforcement and failing to institute any protective reforms after receiving [Plaintiff's] complaints." *Id.* at 56. She alleges that Galesburg is similarly liable for "maintaining customs and policies that directly enabled unconstitutional seizures, arrests, and the denial of due process." *Id.*

Second, Plaintiff alleges that her Fourth Amendment rights were violated on or about February 15, 2024, when Ruark and Officer Ingles "entered the impounded bus and conducted an illegal search," doing so "without a warrant, consent, or court order." *Id.* at 10, 14. Berg's is assertedly liable for facilitating their access to her impounded bus. *Id.* at 14. Lampley is assertedly liable for "failing to supervise, intervene, or prevent the unconstitutional conduct carried out by DCFS Investigator Ruark, despite being in a position of authority and informed of relevant events." *Id.*

Third, Plaintiff alleges that her Fourth Amendment rights were violated over the course of at least three years by Galesburg officials—including Matejewski, Koerner, and Jonathan Fox—when they trespassed onto her property and seized her personal property under the guise of code enforcement on at least five occasions. *Id.* at 13, 67–68. There are many issues with these constitutional claims; the following analysis takes each up in turn.

### a. Berg's

Berg's is a private entity. Section 1983 is not a freestanding cause of action for any constitutional violation—it requires that the "person" who committed the violation have acted

"under color of" law.  42 U.S.C. § 1983.  While "[p]rivate action can become state action when private actors conspire or are jointly engaged with state actors to deprive a person of constitutional rights," *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009), "mere allegations of joint action or a conspiracy" are insufficient, *Scott v. Univ. of Chi. Med. Ctr.*, 107 F.4th 752, 758 (7th Cir. 2024) (quotation marks omitted).  To plausibly allege that private parties acted under color of state law, a plaintiff must allege that the private actors and state actors reached an agreement to deny the plaintiff a constitutional right and that the private actors were "willful participant[s] in joint activity with the State or its agents."  *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) (alteration in original) (quotation marks omitted); *see id.* ("For an individual to act under color of law, there must be evidence of a concerted effort between a state actor and that individual.").  "Merely working in parallel toward a common goal is not the same as conspiring together."  *Scott*, 107 F.4th at 758.

Plaintiff's allegations that Berg's acted under color of law are entirely conclusory.  *See, e.g.*, Am. Compl. 14 ("Berg's . . . facilitated access to the impounded bus and thereby acted jointly with state actors in depriving me of my constitutional rights.").  There are no allegations that Berg's or any of its agents reached any agreement or understanding to violate Plaintiff's rights.  *See Fries*, 146 F.3d at 457.  At best, Plaintiff has alleged that Berg's and state actors worked towards the common goal of disposing of her bus.  Because this is the second time Plaintiff has failed to sufficiently allege a basis for finding Berg's a state actor, see Jan. 29, 2025 Order 7-8, her Fourth Amendment claims against Berg's are DISMISSED WITH PREJUDICE.

### b. Galesburg

Plaintiff's Fourth Amendment claims against Galesburg are asserted under *Monell*.  *See, e.g.*, Am. Compl. 14 (asserting a Fourth Amendment claim against Galesburg "for maintaining

policies, customs, or failures to train that resulted in unconstitutional searches and seizures"). *Monell* held that municipalities may be sued directly under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. "The critical question under *Monell* . . . is whether a municipal . . . policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents." *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc). "A person who wants to impose liability on a municipality for a constitutional tort must show that the tort was committed (that is, authorized or directed) at the policymaking level of government—by the city council, for example, rather than by the police officer who made an illegal arrest." *Vodak v. City of Chicago*, 639 F.3d 738, 747 (7th Cir. 2011). Crucially, § 1983 "does not incorporate the common-law doctrine of respondeat superior, so a municipality cannot be held liable for the constitutional torts of its employees and agents." *First Midwest Bank ex rel. Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021). A claim which "seeks to hold the [municipality] responsible for all official actions of its employees" is impermissible. *Mikolon v. City of Chicago*, No. 14 CV 1852, 2014 WL 7005257, at *5 (N.D. Ill. Dec. 11, 2014).

Plaintiff's *Monell* claims for the three categories of searches and seizures described above fall short for various combinations of three distinct flaws. First, some of Plaintiff's allegations make explicit that they are premised upon an impermissible *respondeat superior* theory—Count Thirteen seeks to hold Galesburg responsible "for authorizing and carrying out warrantless and unlawful property seizures through its ordinance and police enforcement officers." Am. Compl. 67. This allegation does not tie her harms to any policy or custom, and a municipality may not be held responsible solely because its officials harmed the plaintiff. *First Midwest Bank*, 988

F.3d at 986.  Moreover, many of Plaintiff's allegations are premised upon individual officials

acting contrary to Galesburg's policies or customs, as opposed to a particular policy or custom

being the cause of her harms.  For example, Plaintiff asserts that Officer Schlomer wrongfully

impounded her bus by refusing to release the bus to a licensed driver during the January 2024

traffic stop because this refusal was in violation of "local police policy."  Am. Compl. 9.  But

because Plaintiff's asserted entitlement to have her bus driven by an available licensed driver

instead of being impounded comes from Galesburg's policies, seeking to hold Galesburg liable

for individual officers' disregard of that policy is implausible.  *See Glisson*, 849 F.3d at 379.

Second, Plaintiff's Amended Complaint does not support finding that the allegedly illegal

searches and seizures were carried out by final policymakers either.  Based on a statement from

either Officer Schlomer or Fox—"Kisler was all for it," Am. Compl. 8—Plaintiff asserts that

Lieutenant Kisler approved the January 2024 traffic stop.  *See id.* at 17 ("[T]he unconstitutional

actions were not rogue behavior—they were endorsed at the command level.").  But Kisler is not

alleged to be the final policymaking authority regarding the seizure and towing of vehicles in

Galesburg.

Third and finally, Plaintiff's *Monell* claims against Galesburg are simply too conclusory

as they either: (1) fail to identify any particular policy, custom, or decision by a decisionmaker

with final policymaking authority; or (2) provide too few examples to infer that an unauthorized

but widespread and well settled practice or custom was the cause of her harms.  Asserting that

one's injuries were the result of unconstitutional conduct without identifying a particular policy

or custom as the causal mechanism is insufficient to put a municipal defendant on notice of the

claims against it under *Monell*.  *See Olive v. Wexford Corp.*, 494 F. App'x 671, 673 (7th Cir.

2012) (allegation that the defendant had a practice "of denying prison inmates adequate medical

care" did "not identify any concrete policy, let alone an unconstitutional one" and stating that the allegation was "more in the nature of an insult than the sort of allegation required by *Monell*"). And if a plaintiff seeks to rely on an unofficial but widespread practice as the "policy," she must allege facts to support that such a practice exists. There are no "bright-line rules . . . as to how frequently such conduct must occur to" constitute a sufficient basis for this strand of *Monell* liability, "except that it must be more than one instance or even three." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (quotation marks omitted); *cf. Sardon v. Jennings*, No. 24-cv-2565-DWD, 2025 WL 80238, at *3 (S.D. Ill. Jan. 13, 2025) ("Blatantly asserting that there is a hidden policy or custom is not enough."). "The required level of factual specificity rises with the complexity of the claim." *McCauley v. City of Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011).

Here, Plaintiff alleges that Galesburg "maintained a widespread custom of allowing officers to enter and seize property—including homes and vehicles—without warrants, valid legal justification, or due process." Am. Compl. 17. She further alleges that some combination of Matejewski, Koerner, and Jonathan Fox "seized thousands of dollars of [Plaintiff's] property over the years." *Id.* at 36. Unlike her descriptions of misconduct regarding the tow of her bus, there is no connection to a particular policy—instead Galesburg's generalized inaction and failure to control its agents is assumedly the cause of these unlawful searches and seizures. These allegations do "not identify any concrete policy, let alone an unconstitutional one," *see Olive*, 494 F. App'x at 673, nor tie her harms to any decisions made by an alleged decisionmaker with final policymaking authority. That leaves the theory that Galesburg officials were acting pursuant to an unauthorized but widespread and well settled practice or custom. Plaintiff's allegations amount to an accusation that Galesburg allowed its officials to operate routinely in

15

open defiance of the law, a serious and wide-ranging pattern of conduct. Such a vast swath of

illegal conduct requires more factual detail than what Plaintiff has provided. *See McCauley*, 671

F.3d at 616–17. Plaintiff's conclusory accusations that unauthorized but widespread and well

settled practices or customs were the cause of illegal searches and seizures are insufficient to

state a Fourth Amendment *Monell* claim. *See Sardon*, 2025 WL 80238, at \*3.

Because all of Plaintiff's Fourth Amendment claims against Galesburg suffer from one or

more of the three flaws described above, they are DISMISSED.

### c. False Arrest During January 2024 Traffic Stop

Plaintiff asserts false arrest claims against Officers Schlomer, Fox, Woodbury, and

Ruggles, alleging that the traffic stop was "related to a license suspension" which "was later

rescinded, confirming that it should not have been used as the basis for an arrest." Am. Compl.

55–56 (emphasis omitted). Her claim is asserted under both § 1983 and Illinois law. *Id.* at 55.

"To prevail on a Fourth Amendment false-arrest claim, a plaintiff must show that there was no

probable cause for his arrest." *Braun v. Village of Palatine*, 56 F.4th 542, 548 (7th Cir. 2022)

(quotation marks omitted); *see also Jump v. Village of Shorewood*, 42 F.4th 782, 788 (7th Cir.

2022) ("The existence of probable cause to arrest is an absolute defense to any § 1983 claim

against a police officer for false arrest . . . ." (alteration in original) (quotation marks omitted)).

"The existence of probable cause also defeats a false-arrest claim under Illinois law . . . ."

*Braun*, 56 F.4th at 548. "Probable cause exists to arrest a suspect if *at the time of arrest* the facts

and circumstances within the arresting officer's knowledge and of which he has reasonably

trustworthy information would warrant a prudent person in believing that the suspect had

committed or was committing an offense." *Dollard v. Whisenand*, 946 F.3d 342, 353 (7th Cir.

2019) (emphasis added) (quotation marks omitted). "Illinois law makes it a Class A

misdemeanor to drive while one's license, permit, or privilege to drive is revoked or suspended under Illinois law or under the law of any other state." *Trakselis v. Village of Justice*, 758 F. Supp. 3d 842, 847 (N.D. Ill. 2024) (citing 625 ILCS 5/6-303(a)).  So, if an officer knows that someone he observes driving has a suspended license, he has sufficient knowledge to believe that the person is committing a state law offense and, accordingly, probable cause to arrest the person.  *See United States v. Hope*, 906 F.2d 254, 258 (7th Cir. 1990).

Plaintiff alleges that at the time of her January 2024 arrest, her license was suspended. Am. Compl. 56.  Driving on a suspended license gave Officer Schlomer probable cause to arrest her.  *See Hope*, 906 F.2d at 258; *Trakselis*, 758 F. Supp. 3d at 847.  Even assuming the truth of Plaintiff's allegation that her license's suspension was subsequently rescinded, the probable cause determination is made based on facts and circumstances that are known to the officer at the time of arrest, not what would subsequently become known.  *See Dollard*, 946 F.3d at 353. Plaintiff also alleges that her license's suspension was based on lack of insurance and that she "had provided proof of insurance to the State's Attorney's Office that would have avoided the suspension altogether."  Am. Compl. 56.  But Officer Schlomer is not an official with the State's Attorney's Office and Plaintiff does not allege that such proof of insurance should have been within Officer Schlomer's knowledge.  Because the Amended Complaint's allegations demonstrate that Officer Schlomer had probable cause to arrest Plaintiff in January 2024, the false arrest claim asserted under both the Fourth Amendment and Illinois law against her must be DISMISSED.  *See Braun*, 56 F.4th at 548; *Jump*, 42 F.4th at 788.

Officers Fox, Woodbury, and Ruggles are assertedly liable for failing to intervene and prevent Officer Schlomer from arresting Plaintiff.  Am. Compl. 14, 55–56.  Liability under a failure-to-intervene theory requires allegations that Defendants "(1) knew that a constitutional

17

violation was committed; and (2) had a realistic opportunity to prevent it." *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017). Plaintiff's allegations demonstrate that there was no constitutional violation for an unlawful arrest. Officers Fox, Woodbury, and Ruggles cannot be held liable for failing to prevent conduct which itself was not unlawful. *See Gill*, 850 F.3d at 342. The false arrest claims against Officers Fox, Woodbury, and Ruggles must also be DISMISSED. Plaintiff also asserts that Chief Idle is liable for her unlawful arrest during the January 2024 traffic stop on the basis that he "maintain[s] unconstitutional arrest . . . procedures." Am. Compl. 56. This claim must also be DISMISSED for insufficient allegations of an unconstitutional arrest.

### d. Supervisory Officials: Kisler, Vanaken, Legate, Idle, Lampley, and Hansen

Plaintiff asserts that Lieutenant Kisler, Lieutenant Vanaken, Deputy Chief Legate, Chief Idle, and City Manager Hansen are liable for violating her Fourth Amendment rights for failing to take corrective actions on her complaints to them following the January 2024 traffic stop. *Id.* She alleges that Lieutenant Kisler directly approved the January 2024 traffic stop. *Id.* at 8, 15. She alleges that she notified "Lieutenant Vanaken and Deputy [Chief] Legate . . . immediately after the arrest [in January 2024]" and requested "assistance recovering [her] property," but "[t]hey refused to act." *Id.* at 57. As to Chief Idle, Plaintiff asserts that he failed to act "despite having full supervisory authority and knowledge of the unconstitutional policies in place" and notes that she informed him, along with the City Manager and others, of her objections to the timing of her scheduled impound hearing.

"Individual liability pursuant to § 1983 requires personal involvement in the alleged constitutional deprivation." *Est. of Perry v. Wenzel*, 872 F.3d 439, 459 (7th Cir. 2017) (quotation marks omitted); *see also Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018) ("Liability

18

under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not

for those of subordinates, or for failing to ensure that subordinates carry out their tasks

correctly.").  "Personal involvement in a subordinate's constitutional violation requires

supervisors to know about the conduct and facilitate it, approve it, condone it, or turn a blind eye

for fear of what they might see." *Taylor v. Ways*, 999 F.3d 478, 494 (7th Cir. 2021) (quotation

marks omitted).  Particularly instructive is the Seventh Circuit's decision in *Kernats v.

O'Sullivan*, 35 F.3d 1171 (7th Cir. 1994).  There, the Kernats family had fallen behind on their

rent and Officer O'Sullivan wrongfully threatened to arrest them if they did not immediately

vacate their apartment.  *Id.* at 1174.  A few days after the Kernats family vacated their apartment,

Chief Wade met with them and wrote them a letter in an unsuccessful attempt to explain Officer

O'Sullivan's conduct and to dissuade them from suing.  *Id.*  The Seventh Circuit found that Chief

Wade's attempts to dissuade the Kernats family from pursuing legal action did not constitute

personal involvement in Officer O'Sullivan's wrongful seizure, such that Chief Wade was not

liable under § 1983, because "any unconstitutional seizure that may have taken place had been

accomplished and Wade could have done nothing to undo that fact."  *Id.* at 1182–83.

Here, Plaintiff alleges that Lieutenant Kisler both facilitated and directly approved the

impoundment of her bus before it occurred, satisfying the requirement of personal involvement.

*See* Am. Compl. 8, 15.  But Plaintiff does not allege that Lieutenant Vanaken, Deputy Chief

Legate, Chief Idle, or City Manager Hansen had any knowledge of the impending impoundment

of her bus.  She instead alleges that she informed them in writing of her bus's impoundment and

that they failed to act and undo that wrongful seizure.  Am. Compl. 10, 57.  As in *Kernats*, even

if the impoundment of Plaintiff's bus was wrongful, the unconstitutional action had already been

taken and Plaintiff does not advance any non-conclusory allegations that any of these supervisors

19

could have undone the seizure, such that liability under § 1983 is implausible.  *See Kernats*, F.3d at 1182–83; *accord Cravatta v. Lopez*, No. 12 CV 50306, 2016 WL 5871508, at *12 (N.D. Ill. Oct. 7, 2016); *Lopez v. Vidljinovic*, No. 1:12-cv-5751, 2016 WL 4429639, at *3–4 (N.D. Ill. Aug. 22, 2016).  The Fourth Amendment claims based on the wrongful impoundment of Plaintiff's bus asserted against Lieutenant Vanaken, Deputy Chief Legate, Chief Idle, and City Manager Hansen are therefore DISMISSED.

The same analysis applies to Plaintiff's Fourth Amendment claim against Lampley.  *See, e.g.*, Am. Compl. 14 (asserting that Lampley is liable "for failing to supervise, intervene, or prevent the unconstitutional conduct carried out by DCFS Investigator Ruark").  Plaintiff does not allege that Lampley was personally involved in the February 2024 search of her bus, which is the only asserted basis for Ruark's liability under the Fourth Amendment.  *See id.*  Plaintiff seeks to hold Lampley liable solely as Ruark's supervisor and such *respondeat superior* liability is impermissible for a § 1983 claim.  *See, e.g.*, *First Midwest Bank*, 988 F.3d at 986.  The Fourth Amendment claim asserted against Lampley is also DISMISSED.

In sum, the Fourth Amendment claims: (1) asserted against Berg's are DISMISSED WITH PREJUDICE; (2) asserted against Galesburg are DISMISSED; (3) alleging that Plaintiff's January 2024 arrest was wrongful are DISMISSED; and (4) asserted against Lieutenant Vanaken, Deputy Chief Legate, Chief Idle, and City Manager Hansen are DISMISSED.  The only Fourth Amendment claims which survive are those based on the impoundment of the bus in January 2024, the search of the bus on February 15, 2024, and the multiple code enforcement actions resulting in seizures of Plaintiff's property.

Before moving to the next set of claims, it is worth drilling down further into the allegations against the City Manager because Plaintiff's inconsistent pleading decisions render

20

these allegations fatally flawed.  In the Amended Complaint's caption, Plaintiff states that she is

suing "Eric Hansen, City Manager, in his individual capacity."  Am. Compl. 1 (capitalization

altered).  Hansen is named in Counts Six, Seven, Nine, Ten, Fifteen, Sixteen, Seventeen,

Eighteen, Nineteen, Twenty, Twenty-Two, Twenty-Three, Thirty-Nine, and Forty.  *Id.* at 34–44,

49–60, 75–97, 139–43.  Yet Plaintiff occasionally refers to a different individual, Gerald Smith,

as the City Manager in Counts Three, Four, and Five.  *Id.* at 20–34.[8]  Nearly all the allegations

leveled against the City Manager are conclusory.  *See, e.g.*, *id.* at 35 (asserting a claim against

Hansen "for maintaining and allowing patterns of arbitrary enforcement despite notice").  The

only specific factual allegation against either Smith or Hansen is that Plaintiff gave Smith written

notice that her impoundment hearing was not being held in a timely fashion.  *See id.* at 22 ("City

Manager Gerald Smith was notified, but took no corrective action."); *id.* at 10 ("Although city

ordinance requires a hearing within 72 hours, mine was set for 20 days later . . . . I objected in

writing and email to . . . [the] City Manager . . . .").  As there are no non-conclusory factual

allegations regarding Hansen's conduct, all claims against him are DISMISSED.  And as to

Smith's conduct, the allegation that he took no action to undo a police impoundment or to

schedule a hearing, without a commensurate allegation that Smith had any role in either process,

is insufficient to plausibly allege that Smith was personally involved in any constitutional

wrongs.  *See Kernats*, F.3d at 1182–83; *cf. Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009)

(describing as incorrect the "view that everyone who knows about a prisoner's problem must pay

damages" because it would imply that the prisoner "could write letters to the Governor of

---

[8] Press releases from Galesburg indicate that Smith was the City Manager beginning on or about November 7, 2022 and that Hansen assumed that position on December 11, 2023.  *See Welcome Reception for Galesburg City Manager Gerald Smith*, City of Galesburg, https://www.ci.galesburg.il.us/news_detail_T2_R395.php (last visited July 29, 2025); *Public Welcome Reception for City Manager Eric Hanson*, City of Galesburg, https://www.ci.galesburg.il.us/news_detail_T2_R582.php (last visited July 29, 2025).

Wisconsin and 999 other public officials . . . and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care").  All claims against Smith are also DISMISSED.

### 2. Count Three: Procedural Due Process Against Galesburg, Vanaken, Legate, Idle, Ruark, and Lampley

Plaintiff alleges in Count Three that certain Defendants violated her right to procedural due process under the Due Process Clause of the Fourteenth Amendment.  Am. Compl. 20–25. She asserts that Ruark, an investigator for DCFS, and Lampley, Ruark's supervisor, engaged in deception, coercion, and improperly relied upon discredited evidence while pursuing a juvenile petition regarding L.S.  *Id.* at 22–23.  She also alleges that the impoundment hearing concerning her bus was mishandled because: (1) she was entitled to a hearing within seventy-two hours of the bus's impoundment but her hearing was instead scheduled for twenty days later; (2) a phone call with Lieutenant Vanaken was improperly treated as her preliminary impoundment hearing; and (3) "a 10-day notice of disposal for the bus" was mailed by "[t]he City [of Galesburg]" but never delivered to her, and the bus was actually disposed on the same day the notice was sent. *Id.* at 9–10, 21–22.

"Procedural due process claims involve 'a two-step inquiry: (1) whether the defendants deprived the plaintiffs of a constitutionally protected liberty or property interest; and (2) if so, whether that deprivation occurred without due process of law.'"  *England v. Jackson Cnty. Pub. Libr.*, 596 F. Supp. 3d 1164, 1180 (S.D. Ind. 2022) (quoting *Doe v. Heck*, 327 F.3d 492, 526 (7th Cir. 2003), *as amended on denial of reh'g* (May 15, 2003)).  Plaintiff's claims invoke her property interest in her bus as well as her liberty interest in her custodial relationship with L.S, both of which are protected interests.  *See Belcher v. Norton*, 497 F.3d 742, 750 (7th Cir. 2007) (recognizing protected property interest in the plaintiff's vehicle), *as amended* (Nov. 19, 2007);

22

*Brokaw v. Mercer County*, 235 F.3d 1000, 1018–19 (7th Cir. 2000) (recognizing protected liberty interest in parent-child relationship).

Plaintiff fails to allege that Lieutenant Vanaken, Deputy Chief Legate, and Chief Idle had a sufficient level of personal involvement in any of those potentially viable claims.  She asserts that she contacted them to ask for their assistance in ensuring the prompt scheduling of her impoundment hearing but all three declined to act, "stating that it wasn't their responsibility." Am. Compl. 22.  Plaintiff does not allege that it was in fact their responsibility to schedule these hearings, such that a procedural due process claim against them based on the hearing's timing must be dismissed.  *See Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 615 (7th Cir. 2002) (affirming dismissal of constitutional claims related to administrative hearings for lack of personal involvement by the defendants that had no "involvement in or policy control over matters related to the hearing claims"); *Hughes v. Jones*, 40 F. Supp. 3d 969, 980 (N.D. Ill. 2014) (similar).  Her other assertions against these Defendants are either conclusory or are premised on an entitlement to a particular outcome, not a meaningful opportunity to be heard.  *See Brokaw*, 235 F.3d at 1020 ("In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." (alterations and quotation marks omitted)).  The procedural due process claims asserted against Lieutenant Vanaken, Deputy Chief Legate, and Chief Idle are DISMISSED.

### 3. Count Four: First Amendment Retaliation Against Galesburg, Vanaken, Kisler, Legate, Idle, Ruark, Simkins, Lampley, Matejewski, Koerner, Jonathan Fox, and Unidentified State's Attorney Officials

Plaintiff alleges that DCFS officials' investigations of her and Galesburg officials' seizures of her property were in retaliation for her exercise of her First Amendment rights.  This

claim requires that Plaintiff "plausibly allege that (1) she engaged in activity protected by the First Amendment, (2) she suffered a deprivation that would likely deter First Amendment activity in the future, and (3) the First Amendment activity was 'at least a motivating factor' for the retaliatory deprivation." *DeJong v. Pembrook*, 662 F. Supp. 3d 896, 909 (S.D. Ill. 2023) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). The burden at the pleading stage for the causation element is "low" and suspicious timing may be sufficient. *See Whalen v. MacKenzie*, 760 F. Supp. 3d 743, 753–54 (W.D. Wis. 2024) (collecting cases). Yet a complaint's allegations still must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (alteration and quotation marks omitted).

The issue with Count Four is Plaintiff's summary and conclusory discussion of the timelines of her protected activity and Defendants' retaliation. She alleges that "[t]hroughout 2023 and into 2025, [she] consistently exercised [her] constitutional rights" by engaging in litigation, "[r]efusing DCFS overreach," "[r]equesting independent procedures (e.g., drug testing by an outside lab)," filing "[Freedom of Information Act] requests," and "rais[ing] complaints about DCFS, the Galesburg P[olice] D[epartment], and the City [of Galesburg]'s enforcement practices." Am. Compl. 27–28. She emphasizes that "[t]he repeated property seizures, false code citations, illegal searches, and refusal[s] to return property were carried out after [she] engaged in protected legal activity — not before." *Id.* at 28. But the Court cannot, nor could many Defendants, discern the timeline of events here, let alone what makes the timing suspicious—it is wholly unclear which protected activity preceded which retaliatory seizures or retaliatory litigation decisions, and therefore whether any Defendant could have known of any assumedly protected activity and have been motivated to retaliate against Plaintiff.

Simply laying out two years of allegedly protected activity and "at least three years" of seizures, *see id.* at 13, and asserting that they must be connected is insufficient. *See, e.g.*, *Dorsey v. Williams*, No. 21-1858, 2022 WL 337192, at *1 (7th Cir. Feb. 4, 2022) (affirming dismissal of First Amendment retaliation claim where the plaintiff's claim that prison officials failed to adequately investigate who improperly disposed of his legal mail as retaliation for his many grievances and lawsuits because his history of protected activity, standing alone, "did not 'plead[] factual content that allows the court to draw the reasonable inference' that the defendants retaliated against him" (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). As in *Dorsey*, Plaintiff's assertion "that the defendants sought to punish h[er] relies on speculation and is thus insufficient." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Only the allegations with respect to Ruark are even potentially plausible—Plaintiff alleges that Ruark threatened to file a juvenile petition after Plaintiff declined to take a drug screen "due to a history of DCFS falsifying test results." Am. Compl. 10, 27. At least Plaintiff's accusation of falsified test results provides a plausible explanation for why Ruark would be motivated to pursue retaliatory legal action against Plaintiff. Only the claim against Ruark survives merit review screening—the other First Amendment retaliation claims are DISMISSED.

### 4. Counts Five, Six, and Thirty-Eight: Equal Protection Against Galesburg, Schlomer, Vanaken, Kisler, Legate, Idle, Ruark, Simkins, Lampley, Matejewski, Koerner, and Jonathan Fox

Plaintiff asserts that she has been singled out by DCFS officials and Galesburg for differential treatment "without any legitimate governmental interest." *Id.* at 31. She asserts that: (1) she was not allowed to release her bus to another driver and "[o]ther drivers with suspended licenses are routinely allowed to avoid towing"; (2) items were seized from her yard, which was

labeled as "'debris' while others with similar or worse outdoor storage were never cited or raided"; (3) she was "indicated"[9] for "inadequate supervision" when she allowed L.S. to walk to a nearby gas station while "[o]ther parents under more severe circumstances are not similarly penalized"; (4) DCFS "relied on vacated criminal charges and mischaracterized photos from a warrantless search to justify filing a juvenile petition" while similar scrutiny is not "applied to parents without a legal history or who comply silently"; and (5) her "requests for accommodations, independent drug testing, and due process were denied or ignored" while "the same rules and standards were not applied to others without [her] legal history or public advocacy." *Id.* at 31–32, 36–37.

Some of Plaintiff's claims again suffer from insufficient allegations of personal involvement. As previously explained, personal involvement "requires supervisors to know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Ways*, 999 F.3d at 494. The premise of the equal-protection allegations against Lieutenant Vanaken, Deputy Chief Legate, and Chief Russell Idle is described in conclusory fashion as "enforcing disparate towing and ordinance practices." Am. Compl. 30. The Court construes the Amended Complaint liberally and presumes that this refers to the January 2024 impoundment of her bus. For the reasons explained above, this claim must be DISMISSED as asserted against Lieutenant Vanaken, Deputy Chief Legate, and Chief Idle because Plaintiff does not allege that any of those Defendants were made aware of the bus's impoundment before the assertedly unconstitutional seizure was effectuated. *See supra* Section III.B.1.d. Finally, the claim against Galesburg must also be DISMISSED for reasons explained above, namely that

---

[9] "[I]ndicated" refers to a preliminary finding by DCFS of abuse or neglect. *See, e.g.*, *Sebesta v. Davis*, 878 F.3d 226, 230 (7th Cir. 2017) ("DCFS notified [the plaintiff] that she had been 'indicated' for a 'Substantial Risk of Physical Injury/Environment Injurious to Health and Welfare by Neglect.' In English, this signaled that DCFS's investigation had turned up credible evidence of neglect.").

Plaintiff fails to sufficiently allege a causal link between the alleged violations and any of Galesburg's policies or customs.  *See supra* Section III.B.1.b.

> **5.  Count Seven: Abuse of Process Against Galesburg, Vanaken, Kisler, Legate, Idle, Ruark, Simkins, Lampley, Matejewski, Koerner, and Jonathan Fox**

Plaintiff asserts that "child protection proceedings, vehicle seizures, [and] ordinance violations . . . were never employed in their proper form" and instead "were twisted to harass, punish, and intimidate [her] for asserting [her] legal and parental rights" to support her claims for abuse of process.  Am. Compl. 39–44.  As an initial matter, Plaintiff invokes § 1983 for this count in addition to Illinois common law.  *Id.* at 39.  Abuse of process is not a cognizable constitutional tort because all the alleged conduct occurred in Illinois.  *See Adams v. Rotkvich*, 325 F. App'x 450, 453 (7th Cir. 2009) ("[A]buse of process is not a free-standing constitutional tort if state law provides a remedy for abuse of process.  Illinois provides such a remedy." (citing *Podolsky v. Alma Energy Corp.*, 143 F.3d 364, 372 (7th Cir.1998))).  The Court therefore analyzes this claim under Illinois law only.

"Abuse of process requires (1) '[e]xistence of an ulterior purpose or motive' and (2) '[s]ome act in the use of the legal process not proper in the regular prosecution of the proceedings.'"  *Leventhal v. Schenberg*, 917 F. Supp. 2d 837, 843 (N.D. Ill. 2013) (alterations in original) (quoting *Holiday Magic, Inc. v. Scott*, 282 N.E.2d 452, 455 (Ill. App. Ct. 1972)).  "The 'mere institution of a suit or proceeding, even with a malicious intent or motive, does not itself constitute an abuse of process.'"  *Id.* (quoting *Holiday Magic*, 282 N.E.2d at 456).  The plaintiff must allege that the court's "process was used to accomplish some result that is beyond the purview of the process," such as an arrest, seizure of property, or fraudulent and malicious issuance of summons.  *Kumar v. Bornstein*, 820 N.E.2d 1167, 1172–74 (Ill. App. Ct. 2004).

"The elements are strictly construed, as the tort of abuse of process is not favored under Illinois law." *Id.* at 1173.

Plaintiff's allegations are imprecise and boil down to assertions that legal processes were used against her to accomplish their intended purposes—*i.e.*, juvenile proceedings to terminate or modify custody and property-related proceedings to enforce Galesburg city ordinances. Further development of this case will determine whether Defendants' conduct was improper in other ways but there is no doubt that Defendants' decisions to utilize legal processes were not improper as required to maintain a claim of abuse of process—those procedures were used to accomplish results within their purview. *See Holiday Magic*, 282 N.E.2d at 456 ("Regular and legitimate use of process, though with a bad intention, is not a malicious abuse of process." (quotation marks omitted)). That the selected procedures resulted in injuries to Plaintiff's interests cannot maintain this strictly construed and disfavored tort. Count Seven is DISMISSED WITH PREJUDICE because amendment would be futile.

### 6. Count Eight: Intentional Infliction of Emotional Distress Against Galesburg, Schlomer, Ingles, Officer Fox, Woodbury, Ruggles, Kisler, Ruark, Simkins, Lampley, Matejewski, Koerner, Jonathan Fox, and John Does 1–5, unknown ordinance enforcement personnel

Plaintiff asserts that these Defendants intentionally inflicted emotional distress upon her, citing: (1) the January 2024 arrest and impoundment of her bus; (2) the investigation tactics of DCFS personnel including drug testing, searches, indications, and juvenile petition; and (3) the property compliance officers' course of conduct in repeatedly taking her personal property. Am. Compl. 44–49. To plausibly allege a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must allege three elements:

> First, the conduct involved must be truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress or know that

28

there is at least a high probability that his conduct will cause severe emotional distress.  Third, the conduct must in fact cause severe emotional distress.

*Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 63 (Ill. 2016).  Relevant to whether conduct is extreme and outrageous are factors such as whether the defendant "abuse[d] . . . some position that g[a]ve[] him authority over the plaintiff or the power to affect the plaintiff's interests," "the reasonableness of a defendant's belief that his objective [wa]s legitimate," and "whether the defendant [wa]s aware that the plaintiff [wa]s particularly susceptible to emotional distress."  *Sun v. Xu*, 99 F.4th 1007, 1013 (7th Cir. 2024) (quotation marks omitted).

The allegations against Officers Schlomer, Fox, Woodbury, and Ruggles, and by extension Lieutenant Kisler and Galesburg, are sufficient at this stage because of their positions of authority over Plaintiff as well as Plaintiff's contemporaneous statements that she and L.S. suffered from Post-Traumatic Stress Disorder ("PTSD") related to a prior arrest and separation in 2022.  *See* Am. Compl. 8.  Similarly, the allegations against the DCFS officials—Ruark, Simkins, and Lampley—are sufficient given the nature of the parent-child relationship and Plaintiff's statements to Lampley that she "had PTSD, a terminal illness, and limited time left with [her] son."  *Id.* at 46.  However, the allegations against Officers Ingles do not satisfy the standard of extreme and outrageous—he is alleged to have accompanied Ruark during a search of Plaintiff's bus in February 2024 while it was impounded and to have "done nothing" when Plaintiff reported that someone was stealing her vehicle in front of him.  *Id.*  Supervising a search and declining to comply with Plaintiff's commands that he apprehend someone are not conduct "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Sun*, 99 F.4th at 1013 (quotation marks omitted).  Similarly, there are no allegations suggesting that Matejewski, Koerner, Jonathan Fox, or the unidentified ordinance enforcement personnel intended or should have

29

known that pursuing the reasonable aim of enforcing Galesburg's ordinances would result in extreme emotional distress. Plaintiff asserts that Matejewski once told her to "focus on [her] cancer and not on [her] hippie commune," but this is unconnected to any enforcement actions. Am. Compl. 123. Moreover, IIED "does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988) (quoting Restatement (Second) of Torts § 46 cmt. d (Am. L. Inst. 1965)). In sum, the IIED claims against Officer Ingles, Matejewski, Koerner, Jonathan Fox, and the unidentified ordinance enforcement personnel are DISMISSED.

> **7. Counts Nine, Seventeen, Twenty-Six, and Thirty-One: Disability Discrimination Against Galesburg, DCFS, Schlomer, Ingles, Officer Fox, Woodbury, Ruggles, Kisler, Legate, Idle, Ruark, Lampley, Matejewski, Koerner, and Jonathan Fox**

Plaintiff asserts four claims under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131–12134, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Am. Compl. 49–55, 80–83, 103–07, 122–25. Claims under each statute are generally analyzed using the same standards, except that the Rehabilitation Act requires additional allegations that the defendant was a recipient of federal funds. *E.g.*, *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012). Plaintiff names multiple individuals as Defendants for each of these counts, which is improper because "[o]nly public entities, and not individuals, are proper defendants under [Title II of the ADA]." *Ravenna v. Village of Skokie*, 388 F. Supp. 3d 999, 1004 (N.D. Ill. 2019) (quotation marks omitted). All disability discrimination claims asserted against individual Defendants are DISMISSED WITH PREJUDICE because amendment would be futile.

> **8. Counts Eleven, Twenty-Two, Twenty-Three, Thirty, Thirty-Two, Thirty-Three, Thirty-Six, and Thirty-Seven: Substantive Due Process Against Galesburg, DCFS, Schlomer, Ingles, Officer Fox, Woodbury,**

30

**Ruggles, Kisler, Vanaken, Legate, Idle, Ruark, Lampley, Simkins, Matejewski, Koerner, Jonathan Fox, John Does 1-5, and Berg's**

Plaintiff asserts a litany of substantive due process counts.  Am. Compl. 60–67, 92–97, 117–21, 125–28, 131–35.  The Fourteenth Amendment provides in relevant part that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  The substantive due process component of the Fourteenth Amendment "provides heightened protection against government interference with certain fundamental rights and liberty interests," *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997), but "[t]he list of such rights and interests is . . . a short one, including things like the right to marry, the right to have children, the right to marital privacy, the right to contraception, and the right to bodily integrity," *Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012).  Substantive due process "claims must meet a high standard" which "requires allegations of conduct under color of state law that violated a fundamental right or liberty and was so arbitrary and irrational as to shock the conscience."  *Robbin v. City of Berwyn*, 108 F.4th 586, 589 (7th Cir. 2024) (quotation marks omitted).  When a plaintiff's substantive due process claim is premised upon a property interest, she "must first establish either an independent constitutional violation or the inadequacy of state remedies to redress the deprivation before a court will consider whether the interference with property is arbitrary or irrational."  *Gen. Auto Serv. Station v. City of Chicago*, 526 F.3d 991, 1001 (7th Cir. 2008).  Generally, courts are "reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended."  *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).

The factual bases for Plaintiff's substantive due process claims are like her other constitutional claims— she asserts that Galesburg police officers' wrongful seizure of her bus caused her to be homeless, that DCFS agents used this housing instability to attempt to separate

31

her from L.S., *e.g.*, Am. Compl. 60–62, and that the code enforcement actions against her

resulted in seizure of her personal property, *id.* at 92–94.   Aside from harm to her parent-child

relationship with L.S., substantive due process is an ill fit for these factual assertions.

Start with the issues which have already been analyzed, namely that Plaintiff

insufficiently alleges that Berg's is a state actor, *see supra* Section III.B.1.a, that Galesburg's

policies or customs were the cause of these violations, *see supra* Section III.B.1.b, and that

Lieutenant Vanaken, Deputy Chief Legate, and Chief Idle were personally involved in a

constitutional violation, *see supra* Section III.B.1.d.   The substantive due process claims asserted

against Galesburg, Lieutenant Vanaken, Deputy Chief Legate, and Chief Idle are DISMISSED,

and the claims asserted against Berg's are DISMISSED WITH PREJUDICE because Plaintiff

has repeatedly failed to cure the state action issue for her claims against Berg's.

Next, Plaintiff asserts some counts against DCFS as an entity.   *E.g.*, Am. Compl. 61.

However, "neither a state nor a state agency like DCFS is a 'person' for purposes of § 1983."

*Ryan v. Ill. Dep't of Child. & Fam. Servs.*, 185 F.3d 751, 758 (7th Cir. 1999) (citing *Will v. Mich.*

*Dep't of State Police*, 491 U.S. 58, 64 (1989)).   While Plaintiff invokes the doctrine of *Ex parte*

*Young*, 209 U.S. 123 (1908), *see* Am. Compl. 61, this doctrine requires that a particular person

be sued in his or her official capacity for prospective injunctive relief, *see, e.g.*, *Ind. Prot. &*

*Advoc. Servs. v. Ind. Fam. & Soc. Servs. Admin.*, 603 F.3d 365, 371 (7th Cir. 2010).   Plaintiff

does not name any particular DCFS official in his or her official capacity, so her invocation of *Ex*

*parte Young* does not rescue these counts.   The substantive due process claims against DCFS are

DISMISSED.

Finally, and most broadly, Plaintiff may not predicate her substantive due process claims

upon violations of the Fourth Amendment.   "Where a particular Amendment provides an explicit

textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quotation marks omitted). This principle is crucial to analyzing the claims against the police officers and property compliance officers.  Plaintiff alleges that Officers Ingles, Woodbury, Ruggles, Fox, Lieutenants Kisler, Vanaken, and Deputy Chief Legate violated her substantive due process rights by assisting in or failing to prevent the unlawful searches and seizure of her bus.  *See, e.g.*, Am. Compl. 93, 118.  Similarly, Plaintiff alleges that Matejewski, Koerner, Jonathan Fox, and other unidentified property compliance officers sued as John Does 1 through 5 wrongfully seized her property and trespassed.  *E.g.*, *id.*  The liberty interests implicated by these claims are explicitly protected by the Fourth Amendment, such that Plaintiff may not pursue a Fourteenth Amendment Due Process claim against these officials for assertedly illegal searches and seizures.  *See Albright*, 510 U.S. at 274–75.[10]  The claims against Schlomer are distinguishable from those asserted against the other officers because Schlomer is alleged to have used the impoundment of Plaintiff's bus as the basis of a report that Schlomer made to DCFS to justify removal of L.S. from Plaintiff's custody.  Am. Compl. 9.  Plaintiff's claims that Schlomer, Ruark, Simkins, and Lampley interfered with her fundamental right to raise her son may proceed, but the attempts to litigate specific searches and seizures as a matter of substantive due process are DISMISSED WITH PREJUDICE because amendment would be futile.[11]

---

[10] Alternatively, adequate remedies at state law exist for Plaintiff's claims based upon her property interests, as evidenced by Plaintiff's assertion of counts of conversion and trespass to chattels.  Am. Compl. 83–86, 108–11. These state law torts provide another reason to dismiss the substantive due process claims based on interference with Plaintiff's property.  *See Gen. Auto Serv. Station*, 526 F.3d at 1001.

[11] Plaintiff also asserts substantive due process claims against "State's Attorney actors, in their individual capacities if discovery reveals coordination."  Am. Compl. 95 (emphasis omitted).  For the reasons explained below, these actors are entitled to prosecutorial immunity, such that this claim is DISMISSED WITH PREJUDICE.  *See infra* Section III.B.9.

9.  **Count Fourteen: Denial of Access to Courts Against Galesburg, Vanaken, Legate, Idle, Ruark, Lampley, Jording, John Doe State's Attorney officials**

Plaintiff asserts via § 1983 that these named Defendants denied her constitutional right to access to courts based upon allegations that DCFS officials misrepresented evidence, that Galesburg police officers failed to give her a timely impoundment hearing, and that State's Attorney actors engaged in certain litigation practices. Am. Compl. 71–75. A claim for denial of access to courts requires plausible allegations "identifying (1) a non-frivolous, underlying claim; (2) the official acts frustrating the litigation; and (3) a remedy that may be awarded as recompense but that is not otherwise available in a suit or settlement." *Jones v. Van Lanen*, 27 F.4th 1280, 1287 (7th Cir. 2022) (quotation marks omitted).

As an initial matter, Plaintiff's claim against Galesburg must be dismissed for insufficient allegations of a causal connection between any officials' actions and Galesburg's policies or customs. *See supra* Section III.B.1.b. Next, City Attorney Jording and the unidentified State's Attorney officials are entitled to absolute prosecutorial immunity. "Prosecutors are absolutely immune from suits for monetary damages under § 1983 for conduct that is 'intimately associated with the judicial phase of the criminal process.'" *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Prosecutorial immunity extends to civil cases where "the prosecutor is functioning in an enforcement role analogous to his role in criminal proceedings," *id.* (quotation marks omitted). Whether the prosecutor acted "maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence" is immaterial. *Smith*, 346 F.3d at 742 (quotation marks omitted). The immunity falls away only when a prosecutor's "acts are investigative and unrelated to the preparation and initiation of judicial proceedings." *Id.* (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)).

34

Plaintiff's allegations relate solely to conduct that is "intimately associated" with the prosecutorial function—*i.e.*, making arguments at hearings and amending petitions. *See* Am. Compl. 72–73. For example, Plaintiff describes as "a lie" City Attorney Jording's legal argument that her phone call with Lieutenant Vanaken counted as her preliminary impoundment hearing. *Id.* at 72. Setting aside that City Attorney Jording was likely not making a factual assertion but instead characterizing such a phone call as a matter of law, making a false factual claim in court would not deprive him of immunity. *See Smith*, 346 F.3d at 742. Plaintiff's claims against City Attorney Jording and the unidentified State's Attorney officials are DISMISSED WITH PREJUDICE because amendment would be futile.[12]

Turning to Plaintiff's claims against Lieutenant Vanaken, Deputy Chief Legate, and Chief Idle, her allegations relate solely to the timing and number of impoundment hearings that she received. Am. Compl. 72. It is not clear whether the access-to-courts right extends to administrative proceedings like this impoundment hearing, *cf. Guerrero v. Douglas*, No. 22-CV-1217 (NGG) (RER), 2023 WL 5020646, at *4 (E.D.N.Y. Aug. 7, 2023) (noting an absence of precedent supporting the viability of a denial of access to courts claim for police disciplinary proceedings), but even if it does, Plaintiff does not allege that the police officers' actions sufficiently "frustrated" her access to the proceeding to state a denial of access to the courts claim—although it did not result in Plaintiff's desired outcome, she still received her idiomatic day in court. In *Jones*, the Seventh Circuit found that officials' confiscation and destruction of the prisoner-plaintiff's legal documents did not meaningfully impede his legal claims . *Jones*, 27

---

[12] In addition to Count Fourteen, Plaintiff asserts a few other federal and state law claims against prosecutors. For example, Plaintiff asserts a claim of civil conspiracy under Illinois state law against Jording. *See* Am. Compl. 142–43. The Court's analysis of prosecutorial immunity applies equally to those claims. *See Hobbs v. Cappelluti*, 899 F. Supp. 2d 738, 769 (N.D. Ill. 2012) (noting that prosecutorial immunity is coterminous for purposes of Plaintiff's federal and state-law claims); *Kitchen v. Burge*, 781 F. Supp. 2d 721, 737 (N.D. Ill. 2011).

F.4th at 1287–88.  Refusing to advocate for a timelier hearing on a litigant's behalf is a much

less burdensome action.  The claims against Lieutenant Vanaken, Deputy Chief Legate, and

Chief Idle are DISMISSED.

> **10. Counts Fifteen and Thirty-Nine: Conspiracy to Violate Civil Rights Against Galesburg, Berg's, Schlomer, Ingles, Woodbury, Ruggles, Vanaken, Kisler, Legate, Idle, Ruark, Simkins, Lampley, Matejewksi, Koerner, Jonathan Fox, John/Jane Doe collaborators, Jording, John Doe States Attorney's officials**

Plaintiff asserts two counts of conspiracy under 42 U.S.C. § 1985(2)–(3).  Am. Compl.

75–78, 139–42.  Focusing first on § 1985(3), this law prohibits two or more persons from

conspiring "for the purpose of depriving, either directly or indirectly, any person or class of

persons of the equal protection of the laws, or of equal privileges and immunities under the

laws."  42 U.S.C. § 1985(3).  A plaintiff must allege "(1) the existence of a conspiracy, (2) a

purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in

furtherance of a conspiracy, and (4) an injury to person or property or a deprivation of a right or

privilege granted to U.S. citizens."  *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002).  The

second element requires that the defendants have acted with "racial, or perhaps otherwise class-

based, invidiously discriminatory animus."  *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

The Court previously dismissed this claim because Plaintiff failed to allege the necessary class-

based animus.  Jan. 29, 2025 Order 6–7.

Plaintiff again fails to allege that she was discriminated against on the basis of class-

based animus.  She asserts that she was targeted for discriminatory treatment based on her

"lifestyle, appearance, nonprofit, and health."  Am. Compl. 141.  Plaintiff's allegations regarding

her unexplained appearance or lifestyle are devoid of sufficient factual content—lifestyle and

appearance are simply too ambiguous of terms to provide fair notice—to suggest class-based

animus.  *Cf. Erickson*, 551 U.S. at 93 ("Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." (alterations and quotation marks omitted)).  Plaintiff does not describe her nonprofit in any detail in the Amended Complaint.  *See, e.g.*, Am. Compl. 123 (describing the nonprofit solely as an organization "that helped others").  In any event, this sort of economic activity similarly does not suffice for class-based animus under § 1985(3).  *Bowman v. City of Franklin*, 980 F.2d 1104, 1109 & n.6 (7th Cir. 1992).  Finally, construing health as a reference to Plaintiff's cancer diagnosis and asserted disabilities, these too are insufficient for a claim under § 1985(3).  *See D'Amato v. Wis. Gas Co.*, 760 F.2d 1474, 1486 (7th Cir. 1985) (holding that discrimination based on disability cannot predicate a § 1985(3) claim); *Summerland v. Exelon Generation Co.*, 455 F. Supp. 3d 646, 665 (N.D. Ill. 2020).  Plaintiff has again failed to sufficiently allege the sort of class-based animus which § 1985(3) requires.

Turning to § 1985(2), that section "contains two clauses that give rise to separate causes of action pertaining to access to federal and state or territorial courts."  *Wright v. Ill. Dep't of Child. & Fam. Servs.*, 40 F.3d 1492, 1507 (7th Cir. 1994).  The clause based upon access to state courts requires an allegation of class-based animus, *id.* (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)), and as explained above Plaintiff has twice failed to sufficiently allege that she was subjected to class-based animus.  This leaves the clause based upon access to federal court, which requires showing "(1) a conspiracy by the defendants; (2) to injure a party or witness in his or her person or property; (3) because he or she attended federal court or testified in any matter pending in federal court; (4) resulting in injury or damages to the plaintiff."  *Id.*  Plaintiff alleges that the State's Attorney officials offered to drop the juvenile petition regarding L.S. if she agreed to not remove the juvenile petition to federal court.  Am. Compl. 28.  But the filing of

her multiple lawsuits in federal court postdated most of the injuries to her personal property and relationship with L.S. which she attributes to the conspiracy. *See id.* at 76–77.

More fundamentally, the issue with Plaintiff's claim is the conclusory nature of her allegations of a conspiracy. She does not allege when the conspiracy was formed, how the purpose of the conspiracy was to prevent her from attending or testifying in federal court, or when particular Defendants joined the conspiracy. *See Copeland v. Nw. Mem'l Hosp.*, 964 F. Supp. 1225, 1236 (N.D. Ill. 1997). At best, she has alleged that Defendants acted in parallel towards some nebulous goal of acting contrary to her interests, but working in parallel is not the same as a conspiratorial agreement. *See Scott*, 107 F.4th at 758. Simply painting a broad swath of action as a conspiracy based on suspicious timing and mutual goals is insufficient to satisfy Plaintiff's pleading burden. In sum, both counts are DISMISSED WITH PREJUDICE, either because of repeated failures to cure pleading deficiencies or because of the futility of further amendment.

### 11. Count Eighteen and Twenty-Seven: Conversion and Trespass to Chattels Against Galesburg, Berg's, Ingles, Kisler, Matejewski, Koerner, and Jonathan Fox

Plaintiff asserts two counts for conversion and/or trespass to chattels. Am. Compl. 83–86, 108–11. "Trespass to personal property involves an injury to or interferences with possession of chattel, with or without physical force." *Zissu v. IH2 Prop. Ill., L.P.*, 157 F. Supp. 3d 797, 803 (N.D. Ill. 2016). "A trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." *Sotelo v. DirectRevenue, LLC*, 384 F. Supp. 2d 1219, 1229 (N.D. Ill. 2005) (quoting Restatement (Second) of Torts § 217 (Am. L. Inst. 1965)). Conversion can be thought of as a more severe form of trespass to chattels, *i.e.*, the you-broke-it-now-buy-it form of the tort. *See,*

*e.g.*, Restatement (Second) of Torts § 227 cmt b. (Am. L. Inst. 1965) ("[T]he question becomes one of whether the defendant's conduct is a matter of sufficient importance to justify requiring him, in effect, to buy the chattel at a forced sale."). "The difference between [trespass to chattels and conversion] is a matter of degree." *Obi v. Chase Home Fin., LLC*, No. 10 C 3154, 2010 WL 4810609, at *4 (N.D. Ill. Nov. 19, 2010). Conversion requires a plaintiff to show "that (1) [s]he has a right to the property; (2) [s]he has an absolute and unconditional right to the immediate possession of the property; (3) [s]he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Loman v. Freeman*, 890 N.E.2d 446, 461 (Ill. 2008) (quotation marks omitted).

Plaintiff's claims focus on the personal property which Galesburg has seized from her over the past three years, including vehicles, aquaponics equipment, "[f]arming tools, gardening gear, scrap metal, lumber, sheds, and [her] son's plastic playhouse." Am. Compl. 84–85. At this stage, the Court focuses only on the claim asserted against Officer Ingles. Plaintiff faults him "for failure to retrieve stolen keys and refusal to intervene in property recovery." *Id.* at 109. This amounts to an allegation of omission or nonfeasance; not an attempt to dispossess another of the chattel or to assume control, dominion, or ownership over the property. *See Sotelo*, 384 F. Supp. 2d at 1229; *Loman*, 890 N.E.2d at 461. Simply put, failing to prevent another's wrongful dispossession is not itself conversion, absent some plausible allegation of accomplice liability. The claim as asserted against Officer Ingles is DISMISSED.

### 12. Count Nineteen: Trespass to Land Against Galesburg, Kisler, Matejewski, Koerner, Jonathan Fox, and John Does 1–5

Plaintiff asserts that certain Defendants trespassed onto her real property. Am. Compl. 86–88. "A trespass is an invasion in the exclusive possession and physical condition of land." *City of Evanston v. Texaco, Inc.*, 19 F. Supp. 3d 817, 826 (N.D. Ill. 2014) (quoting *Lyons v. State*

39

4:24-cv-04176-SLD-RLH    # 40    Filed: 07/29/25    Page 40 of 43

*Farm Fire & Cas. Co.*, 811 N.E.2d 718, 725 (Ill. App. Ct. 2004)).  The issue here is that Plaintiff

fails to allege the nature of her interest in the unidentified real property.  She refers to unlawful

entries "onto [her] private property, including [her] backyard, despite [her] having a privacy

fence," but does not specify whether this was a plot of land that she owned, leased, occupied, etc.

*See* Am. Compl. 87.  One might surmise that Plaintiff had some sort of agreement securing a

place to permanently park her bus.  But without any allegations regarding the nature of Plaintiff's

interest in her "land," *id.*, the Court cannot conclude that she has plausibly alleged that any

Defendants interfered with her "exclusive possession" thereof, *City of Evanston*, 19 F. Supp. 3d

at 826 (quotation marks omitted).  Therefore, Count Nineteen is DISMISSED.

### 13. Counts Twenty and Twenty-Eight: Negligent Infliction of Emotional Distress Against Galesburg, Berg's, Schlomer, Ingles, Officer Fox, Woodbury, Ruggles, Kisler, Ruark, Simkins, Lampley, Matejewski, Koerner, Jonathan Fox, and John Does 1–5

Plaintiff asserts two counts for negligent infliction of emotional distress ("NIED").  Am.

Compl. 88–91, 112–14.  NIED requires allegations of the "traditional elements of negligence,

which are duty, breach, causation, and damages."  *Benton v. Little League Baseball, Inc.*, 181

N.E.3d 902, 931 (Ill. App. Ct. 2020).  For plaintiffs claiming they are direct victims, as opposed

to bystanders, they must also satisfy the "impact rule" which requires "a contemporaneous

physical injury or impact, requiring actual physical contact of some sort."  *Id.* (citing *Schweihs v.

Chase Home Fin., LLC*, 77 N.E.3d 50, 58–59 (Ill. 2016)).[13]  Aside from her arrest by Schlomer,

Plaintiff does not allege that any Defendant ever physically contacted her.  Therefore, these

claims as asserted against all Defendants except Schlomer and Galesburg are DISMISSED.

---

[13] Plaintiff asserts that direct impact is not required.  Am. Compl. 88 (citing *Corgan v. Muehling*, 574 N.E.2d 602 (Ill. 1991)).  That understanding of *Corgan* has since been overruled.  *See, e.g.*, *Schweihs*, 77 N.E.3d at 59 ("To the extent plaintiff argues that *Corgan* eliminated the impact rule for direct victims, a careful reading of . . . *Corgan* . . . indicates that [the Illinois Supreme Court] did not eliminate the impact rule for negligent infliction of emotional distress claims brought by direct victims.").

### 14. Count Forty: Civil Conspiracy Against All Defendants

Plaintiff alleges that all Defendants were engaged in a civil conspiracy under Illinois law to "harass, intimated, and punish" Plaintiff. Am. Compl. 142–43. Civil conspiracy under Illinois law requires sufficient allegations of: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (citing *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999)). As was the case for Plaintiff's claims of civil conspiracy under 42 U.S.C. § 1985, the Court finds that Plaintiff's conclusory allegations of a civil conspiracy are insufficient. *See supra* Section III.B.10. Count Forty is functionally an unnecessary umbrella claim which attempts to hold each Defendant liable for each other's allegedly tortious conduct. This attempt falls short because Plaintiff fails to allege the basic details of any such agreement, such as when it was formed and when each Defendant joined the conspiracy. *See Borsellino*, 477 F.3d at 509. Count Forty is DISMISSED.

### CONCLUSION

Accordingly, Plaintiff Brandie Roberts's Motion to Appoint Counsel, ECF No. 29, is DENIED WITHOUT PREJUDICE, Motion to Voluntarily Dismiss Judge Long as a Defendant, ECF No. 35, is GRANTED, and Amended Complaint for Violation of Civil Rights (42 U.S.C. §§ 1983 and 1985), ECF No. 28, is DISMISSED IN PART for failure to state a claim. The following Defendants are DISMISSED: Judge Chad Long, City Attorney Jason Jording, Lieutenant Vanaken, Deputy Chief Legate, Chief Russell Idle, City Manager Eric Hansen, City

Manager Gerald Smith, and unidentified State's Attorney officials.  Only the following claims, as narrowed by this Order, remain:

| Claim | Defendants | Pages |
| --- | --- | --- |
| Fourth Amendment | Schlomer, Ingles, Officer Fox, Woodbury, Ruggles, Kisler, Ruark, Matejewski, Jonathan Fox, John Doe ordinance officers | 13–16, 55–60, 67–71 |
| Fourteenth Amendment: Procedural Due Process | Galesburg, Ruark, Lampley | 20–25 |
| Fourteenth Amendment: Equal Protection | Kisler, Ruark, Simkins, Lampley, Matejewski, Koerner, Jonathan Fox | 30–34, 34–39, 135–38 |
| Intentional Infliction of Emotional Distress | Galesburg, Schlomer, Officer Fox, Woodbury, Ruggles, Kisler, Ruark, Simkins, Lampley | 44–49 |
| Disability Discrimination | Galesburg, DCFS | 49–55, 80–83, 103–07, 122–25 |
| Fourteenth Amendment: Substantive Due Process | Schlomer, Ruark, Simkins, Lampley | 60–67, 92–97, 117–21, 125–28, 131–35 |
| Denial of Access to Courts | Ruark, Lampley | 71–75 |
| Conversion and Trespass to Chattels | Galesburg, Berg's, Kisler, Matejewski, Koerner, Jonathan Fox | 83–86, 108–11 |
| Negligent Infliction of Emotional Distress | Schlomer | 88–91, 112–14 |

If she desires, Plaintiff may, by August 19, 2025, seek the Court's leave to file another amended complaint which omits the claims that the Court has dismissed with prejudice and, if possible, addresses the deficiencies in the claims that were not dismissed with prejudice.  The proposed amended complaint should be attached as an exhibit to the motion for leave to file. Any motion for leave to file a proposed amended complaint that attempts to reassert claims that have been dismissed with prejudice will be summarily denied for failure to follow court orders. The Court will provide further directions regarding service after either the time for Plaintiff to seek the Court's leave to file an amended complaint has passed or the Court has resolved Plaintiff's request for such leave.

Entered this 29th day of July, 2025.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE